James D. HODGSON, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

Emmons CHRISTOPHER, Sheriff of Grand Forks County, et al., Defendants,

Civ. No. 4693.

United States District Court, D. North Dakota, Northeastern Division.

Nov. 6, 1973.

Harper Barnes, John B. Remick, U. S. Dept. of Labor, Kansas City, Mo., for plaintiff.

Thomas B. Jeliff, State's Atty., Robert A. Alphson, Grand Forks, N. D., for defendants.

## MEMORANDUM OF DECISION

BENSON, Chief Judge.

Peter J. Brennan as Successor to James D. Hodgson, Secretary of Labor, United States Department of Labor, seeks to enjoin the Clerk of Court of the First Judicial District of North Dakota and the Sheriff of Grand Forks County, North Dakota, from violating the provisions of Section 303, Title III, Restriction on Garnishment, of the Consumer Credit Protection Act (15 U.S.C. §§ 1671–1677), hereinafter called the CCPA. Section 303(c) of the Act provides that:

"(c) No court of the United States or of any state may make, execute, or enforce an order or process in violation of this section."

The Secretary's complaint alleges that there are two practices employed in Grand Forks County, North Dakota, pursuant to the North Dakota Century Code which are violative of the CCPA. The parties have stipulated as to all facts relevant to this case. The issues presented are novel, and will be discussed seriatim.

## I.

Although North Dakota has incorporated § 302(a) and (b) of the CCPA (15 U.S.C. §§ 1672–1673) into § 32–09–02 of the Century Code, the Secretary urges that § 32–09–17 in its operation frustrates the scope and purpose of the CCPA. Section 32–09–17 reads as follows:

"In case the answer of the garnishee shall show indebtedness to the defendant, he may pay the amount thereof to the officer having a warrant of attachment in the action, if any, or otherwise to the clerk of the court, or, if the garnishment is in aid of an execution, to the sheriff having the execution, and the officer to whom such payment is made shall give him a receipt specifying the facts, and such receipt shall be a complete discharge of all liability to any party for the amount so paid. If the answer discloses any money, credits, or other property, real or personal, in the possession or under the control of the garnishee, the officer having a writ of attachment or an execution, if any, may levy upon the interest of the defendant in the same; otherwise the garnishee shall hold the same until the order of the court thereon."

The Court construes this section as allowing an employer-garnishee to pay the

entire amount of an individual's paycheck to the sheriff or clerk of court without regard to the restrictions on the maximum allowed under 303(a) of the CCPA (15 U.S.C. § 1673(a), N.D.C.C. § 32–09–02). By the operation of § 32–09–17, it is possible that the employee-debtor would be deprived of all accrued earnings pending a court determination. At trial, the defendants conceded that if an amount *beyond* that allowed by the Act was surrendered to the Court pursuant to § 32–09–17, then the employee would be entitled to all the benefits of the CCPA.

## II.

Also challenged is a section of the North Dakota Century Code relating to execution of judgments. Section 28–21–08 of the Code provides that:

"All goods, chattels, moneys, and other property, both real and personal, or any interest therein, of the judgment debtor not exempt by law, and all property and rights of property seized and held under attachment in the action are subject to execution. Shares and interests in any corporation or company, and debts and credits, and all other property, both real and personal, and any interest in real or personal property, and all other property not capable of manual delivery, may be taken on execution and sold as provided in this chapter. The levy of an execution shall be made in the same manner as a levy under a warrant of attachment."

By this provision, the Court finds that the Sheriff of Grand Forks County, pursuant to an execution issued by the clerk of court, may levy on all personal property owned by the judgment debtor; included in such levy, if available, may be an issued payroll check for employee's earnings actually in the possession of the employer or any other party. The sheriff, under such levy, takes possession of the check, money order or draft, to use in satisfaction of the judgment debt. Thereafter, the debtor has the right to claim any exemptions available to him under N.D.C.C. Chapter 28–22.

The Secretary's position is that a judgment debtor's paycheck, issued by his employer as compensation for work rendered during a particular period, constitutes "disposable earnings" while still in the possession of the employer. Therefore, any legal or equitable procedure, including a sheriff's levy pursuant to a writ of execution issued in aid of judgment, which requires that a paycheck be withheld from the debtor-employee, violates the CCPA restrictions on garnishment, and is preempted thereby.

In response, the Defendants claim that the provisions of the law for issuance of executions on judgments are entirely separate and distinct from the garnishment provisions and that Congress, in enacting the CCPA, limited its provisions to "garnishment". With this, the Secretary disagrees, saying that the broad definition given to "garnishment" in 15 U.S.C. § 1672(c) clearly demonstrates that with regards to the CCPA's operation, any distinction between execution and garnishment is irrelevant.

As a second contention, the Defendants argue that once the debtor-employee's paycheck has been issued, it becomes personal property subject to execution under N.D.C.C. § 28–21–08, and that the CCPA was intended only to protect from attachment those wages that accrued but not yet paid. The Secretary urges there is no distinction between accrued but unpaid wages in the employer's possession, and accrued wages transformed into a payroll check which is in the employer's possession at the time the garnishment writ is served. In either case, it is argued, the CCPA restrictions embodied in N.D.C.C. § 32–09–02 must apply.

## III.

Time honored principles of statutory construction dictate that a court should give prominence to the Congressional

findings involved. Katzenbach v. McClung, 379 U.S. 294, 85 S.Ct. 377, 13 L. Ed.2d 290 (1964). It is well settled and needs no further discussion here that Congress clearly has the power to enact the Consumer Credit Protection Act. Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824); Hodgson v. Hamilton Municipal Court, 349 F.Supp. 1125 (S.D.Ohio 1972); Hodgson v. Cleveland Municipal Court, 326 F.Supp. 419 (N.D. Ohio 1971).

Before interpreting the specific provisions bearing on the questioned N.D.C.C. sections, it is necessary to gain an overview of the aims and purposes Congress sought to accomplish by the enactment of the CCPA.

█ Title III of the Act, § 301 (15 U.S.C. § 1671), sets out three Congressional findings. A review of these findings, coupled with a reading of the legislative history found in the House Report and the Conference Report, 2 U.S.Code Cong. & Admin.News 1968 at p. 1962, clearly demonstrates that Congress intended to maximize the protection available to the debtor. Congress determined that weekly wage earners especially needed protection from excessive garnishment. See generally, Annot., 14 A.L. R. Fed. 447.

That Congress intended a broad application of the Act is demonstrated by the definition provisions of § 302 (15 U.S.C. § 1672) set out below:

"For the purposes of this subchapter:

(a) The term "earnings" means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.

(b) The term "disposable earnings" means that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld.

(c) The term "garnishment" means any legal or equitable procedure through which the earnings of an individual are required to be withheld for payment of any debt."

█ With respect to (c) above, Congress in its definition of "garnishment" did not differentiate between the kinds of debts owed nor did it restrict the term to a specific withholding. The CCPA applies to *any legal or equitable procedure*. These words, given a broad construction, reasonably may be found to encompass the type of wage surrender permitted by N.D.C.C. § 32–09–17. The Court concludes that the Congressional purpose is frustrated insofar as N.D.C. C. § 32–09–17 allows the garnishee to surrender the debtor's wages in excess of the maximum amount prescribed by § 303(a) of the Consumer Credit Protection Act (15 U.S.C. § 1673(a)). § 32–09–17 of the North Dakota Century Code has the potentiality of resulting in the excessive garnishments proscribed by the CCPA. Consequently, § 32–09–17 of the North Dakota Century Code must be to that extent preempted by § 303(a) of the Act.

### IV.

Section 28–21–08, which permits a sheriff's levy on a judgment debtor's paycheck, is not a part of the North Dakota garnishment statute. Nonetheless, that statute, insofar as it operates to deprive the employee-debtor of all his earnings, does come within the scope of those ills Congress sought to remedy by the enactment of the CCPA.

██ As pointed out in the case of Hodgson v. Hamilton Municipal Court, *supra*, 349 F.Supp. at 1139, the Act applies to proceedings in aid of execution as well as attachment proceedings. This construction is clearly arrived at by an ordinary reading of the statutory language used in 15 U.S.C. § 1672. The term "garnishment" is not restricted, but includes any procedure by which earnings of an individual are withheld. In view of this, whatever definition is given to "garnishment" for other pur-

poses (those discussed in 30 Am.Jur.2d Executions § 1; 18 Words and Phrases 130, etc.), for the purpose of this decision the restrictions of the CCPA are applicable to proceedings under North Dakota law in aid of execution in all courts, as well as proceedings in "execution of the judgment".

■ The Defendants argue that once a judgment debtor's paycheck has been issued it becomes personal property fully subject to levy and loses its identity as "earnings". The Defendants, in essence, would have this Court narrowly apply the terms "earnings" and "disposable earnings" to mean only those wages which have accrued but not paid. Regardless of whether the debtor-employee's wages remain accrued but unpaid, or have been reduced to a payroll check, whenever they remain in the possession of the employer, they are "withheld" within the context of the Act. Not only is this in keeping with the spirit of the CCPA, but it is logical. Clearly, if wages have not been turned over to the employee, they are being withheld by the employer. Any distinction to be drawn is in form only, and does not change the nature of the wages. Whenever compensation paid or payable for work done or services rendered is clearly identifiable as such, its primary identity for the purposes of the CCPA is that of "earnings". It was in this posture that the court in In re Cedor, 337 F.Supp. 1103, 1107 (N.D.Cal.1972), declared that a refund of income tax withheld from a bankrupt's wages should be characterized as earnings.

It would be a misconstruction of the scope and intent of the act were the court to hold otherwise. The Defendants' argument is specious for a very basic reason. It would be comparatively simple for a sheriff to ascertain when an employer issues his payroll checks, or puts cash in pay envelopes. Once the sheriff has discovered the time of payroll issuance, he could avoid the problems and restrictions of the CCPA by simply waiting and levying on the debtor's wages after issuance because then their nature, according to the Defendants, changes to personal property.

An Act of Congress must be construed in the light of common sense consistent with its expressed purpose and intent. The interpretation urged by the Defendants would circumvent the Act in Grand Forks County if the result prohibited under the garnishment statutes could be achieved by simply proceeding under the execution statutes.

## V.

The Consumer Credit Protection Act can be given its intended effect only by the enjoining of the Clerk of Court of the First Judicial District of North Dakota and the Sheriff of Grand Forks County. *See generally* Hodgson v. Hamilton Municipal Court, *supra.*

It is ordered, in conformance with the opinion of this Court herein, that judgment be entered permanently enjoining and restraining Emmons Christopher as Sheriff of Grand Forks County, North Dakota, and Vivian Seim, as Clerk of Court, District Court, First Judicial District, Grand Forks County, North Dakota, and their successors in office, from participating or aiding in any process or procedure under Chapters 28–21, 32–08, 32–09, North Dakota Century Code, or any other North Dakota statute, which would deprive an individual of the benefits, protections and restrictions, in relation to compensation for personal services rendered, provided by the Consumer Credit Protection Act (15 U.S.C. Sections 1671–1677).