SEARS, ROEBUCK & COMPANY v A. T. & G. COMPANY, INC.

OPINION OF THE COURT

1. GARNISHMENT—DEDUCTIONS FROM INCOME—CONSUMER CREDIT PRO-
   TECTION ACT—STATUTES.

   A deduction taken from an employee-debtor's pay by the em-
   ployer-garnishee, for the purpose of repayment of a loan made
   to the employee by the employer, cannot serve to reduce
   disposable income for purposes of the Federal Consumer Credit
   Protection Act because such a payment is not a deduction
   required by law to be withheld (15 USCA 1672[b]).

2. GARNISHMENT—LIMITATIONS ON GARNISHMENT—DEDUCTIONS FROM
   INCOME.

   An employer may deduct from the disposable income of its
   employee whatever sum is agreed upon by the employee-debtor
   where the employee owes sums to the employer, without limita-
   tion; a garnishor may then claim the difference, if any, between
   the employer's deduction and 25% of the debtor's disposable
   income, and if the employer's deduction is more than 25% of
   disposable income the garnishor will recover nothing.

3. GARNISHMENT—GARNISHEES—SETOFF—PRIORITY OF CLAIM—COURT
   RULES.

   A court rule which allows a garnishee to claim any setoff of
   which he could have availed himself against the principal
   defendant if he had not been garnisheed establishes a priority
   in favor of the garnishee as opposed to the garnishor where the
   principal defendant is indebted to both the garnishee and the
   garnishor (DCR 738.6; GCR 1963, 738.6).

4. GARNISHMENT—LIMITATIONS ON GARNISHMENT—STATUTES—COURT
   RULES—REASONABLE CONSTRUCTION.

   Garnishment will be limited whenever possible by reasonable
   construction of court rules and statutes because it is a harsh
   remedy.

REFERENCE FOR POINTS IN HEADNOTES
[1–9] 6 Am Jur 2d, Attachment and Garnishment §§ 176 *et seq.,* 372
*et seq.,* 446 *et seq.*

5. Garnishment—Exemption of Wages—Appeal and Error—Construction of Rules.

A rule which affects the exemption of wages from garnishment is construed by the Court of Appeals in a way that will benefit the debtor.

6. Garnishment—Consumer Credit Protection Act—Disposable Income—Limitations on Garnishment—Statutes.

The Federal Consumer Credit Protection Act limits garnishments to 25% of the debtor's disposable income, and state laws should be interpreted in a manner that best serves the purpose of the Federal law, which is to ensure that wage earners are able to receive at least 75% of their take-home pay so that they have enough cash to meet basic needs (15 USCA 1601 *et seq.*).

Dissent by Bashara, P. J.

7. Garnishment—Consumer Credit Protection Act—Private Transactions—Wage Assignments—Statutes.

*The Consumer Credit Protection Act applies only to garnishments and similar transactions enforced by judicial proceeding and does not apply to voluntary private transactions such as wage assignments (15 USCA 1601* et seq.*).*

8. Garnishment—Garnishees—Setoff-Deductions from Income—Disposable Earnings—Statutes—Court Rules.

*A garnishee defendant is entitled by court rule to a setoff before the garnishor plaintiff can reach the funds of the principal defendant which are in the hands of the garnishee defendant, and this setoff is not to be deducted in determining disposable earnings under the Consumer Credit Protection Act because it is not a deduction "required by law to be withheld" (DCR 738.6; 15 USCA 1672[b]).*

9. Garnishment—Creditor's Rights—Loans to Employees—Deductions from Income.

*A ruling which allows an employer who is periodically deducting less than 25% of an employee's disposable income in repayment of a loan to defeat the rights of judgment creditors indefinitely by increasing the deduction to 25% of disposable income when writs of garnishment are served is patently inequitable.*

Appeal from Wayne, Joseph A. Moynihan, Jr., J.

Submitted June 2, 1975, at Lansing. (Docket No. 20459.) Decided January 6, 1976.

Complaint in district court by Sears, Roebuck & Company against A. T. & G. Company, Inc. for payment of sums allegedly due under a writ of garnishment. Judgment for plaintiff. Upon appeal to the circuit court, the case was remanded, disallowing any deduction from the employee-debtor's wages in excess of 25%. Defendant appeals. Reversed.

*M. Glenn Grossman* for plaintiff.

*William R. Stackpoole* for defendant.

Before: BASHARA, P. J., and J. H. GILLIS and M. F. CAVANAGH, JJ.

M. F. CAVANAGH, J. We are called upon to determine the rights and priorities of parties to a garnishment proceeding; we must consider novel issues of Federal and state law that are not easily resolved.

On April 21, 1971, plaintiff-appellee (garnishor) was awarded a judgment of $275.89 against principal defendant Phillips (debtor). A writ of garnishment issued and was served on garnishee-defendant-appellant (garnishee), the employer of debtor Phillips. Garnishee filed a disclosure pursuant to District Court Rule 738.6, indicating that debtor's gross earnings were $189.88, and his mandatory deductions $26.30, leaving a disposable income of $163.58. Of this, garnishee claimed a deduction of $40.89 as a weekly installment payment of prior loans of $5,957.32 by garnishee to debtor. Garnishee contended that this $40.89 deduction, being 25% of the debtor's disposable income of $163.58,

barred any payment to garnishor because of a Federal law limiting garnishments to 25% of disposable income. Consequently, garnishee refused to tender any money to garnishor and paid debtor $122.69.

Garnishor, displeased with garnishee's action, sued in district court. There followed a district court ruling, an appeal of that ruling by the garnishee in the Wayne County Circuit Court, an order of the circuit court, and garnishee's appeal of that order to this Court. To comprehend the district court ruling, the circuit court ruling, and our opinion today, we must state the Federal and state laws that have engendered this controversy.

In 1968 Congress enacted the Federal Consumer Credit Protection Act, 82 Stat 146; 15 USC 1601, *et seq.,* effective July 1, 1970. Subchapter II, 82 Stat 163; 15 USC 1671–1677, is concerned with restrictions on garnishment. Section 1673 sets out a formula for determination of the maximum allowable garnishment:

"(a) Except as provided in subsection (b) of this section and in section 1675 of this title, the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed

"(1) 25 per centum of his disposable earnings for that week, or

"(2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by section 206(a)(1) of Title 29 in effect at the time the earnings are payable,

whichever is less. In the case of earnings for any pay period other than a week, the Secretary of Labor shall by regulation prescribe a multiple of the Federal minimum hourly wage equivalent in effect to that set forth in paragraph (2)."

* * *

"(c) No court of the United States or any State may make, execute, or enforce any order or process in violation of this section."

To apply the formula, one must look to the definitions of disposable earnings provided for in the act, § 1672(b):

"The term 'disposable earnings' means that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld."

The limitations apply only to garnishment proceedings, also defined in the act, § 1672(c):

"The term 'garnishment' means any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt."

It is clear that, in the present case, there was a "garnishment proceeding" that brings into consideration the congressional restrictions; it is equally clear that the disposable income subject to the garnishment formula is $163.58. The loan payment deduction by the garnishee cannot serve to reduce disposable income for purpose of the act, for the loan payment is not a deduction "required by law to be withheld".

Were it not for the loan payment deduction by the garnishee, there is no doubt that the garnishor could, under the act, garnish 25% of $163.58, or $40.89. No one disputes that this is the maximum claim that the garnishor can make. The question to be resolved is whether the garnishor can claim any or all of that 25% of disposable income when the garnishee has a valid deduction. The presence

of the loan agreement requires us to turn to the
state law for a determination of priorities in pay-
ments.

Under state law, DCR 738.6, a garnishee is
required to file a disclosure statement.[1] This court
rule does more than merely require disclosure: the
rule establishes a priority[2] in favor of the gar-
nishee:

"Disclosure. The garnishee shall file with the clerk of
court a disclosure under oath within 6 days after the
date of the service of the writ upon him. The *disclosure*
shall reveal any liability to the principal defendant as
specified in DCR 738.5, and, except as to claims for
unliquidated damages for wrongs or injuries, *may claim
any setoff of which the garnishee could have availed
himself against the principal defendant if he had not
been garnisheed.* Unless the plaintiff takes further steps
as authorized by these rules within 6 days after the
receipt of notice of the filing of the garnishee's disclo-
sure, the disclosure shall be held to be sufficient."
(Emphasis added.)

The issue in the present case is how the setoff

[1] While the garnishment herein was filed in district court and thus
involved DCR 738.6, effective January 1, 1969, the Michigan General
Court Rules, GCR 1963, 738.6, contains identical language.

[2] The parties have not argued that the Supreme Court is without
authority to establish priorities between parties in garnishment pro-
ceedings. We make no comment on that issue. *See* MCLA 600.4011(2);
MSA 27A.4011(2) (formerly MCLA 600.4011(1)(b); MSA 27A.4011(1)(b),
as amended 1974 PA 371, eff. April 1, 1975), which gives the Supreme
Court authority to adopt rules for garnishment proceedings in circuit
court "to protect the parties". The same conditions will apply in
district courts. MCLA 600.8306(1), (2); MSA 27A.8306(1), (2), (as
amended by 1974 PA 371, eff. April 1, 1975).
We do note that the doctrine of setoff by a garnishee is well estab-
lished in Michigan jurisprudence; DCR 738.6 and its counterpart GCR
1963, 738.6 are not novel doctrines created by the Court. *See Cum-
mings v Fearey,* 44 Mich 39; 6 NW 98 (1880). *See also* MCLA
600.7579; MSA 27A.7579 (allowing setoff in justice court and limiting
garnishee liability "for the balance after adjustment of mutual de-
mands") repealed by 1974 PA 297, § 2. MCLA 408.521; MSA 17.271 is
arguably statutory authority for an employer-garnishee setoff, al-
though it says nothing about priorities.

rights given to the garnishee by DCR 738.6 affect the garnishor's claim to 25% of the debtor's disposable income. We must determine if either the Federal act or the state court rule requires a particular order of preference.

In so doing, it is helpful to realize that the respective Federal and state enactments here involved do not conflict with each other. In this regard, the case of *Hodgson v Hamilton Municipal Court,* 349 F Supp 1125, (SD Ohio, 1972), appositely stated at 1132–1133:

"Congress clearly indicated on the face of its legislation on garnishment that it did not intend to preempt the entire field of garnishment law from the States, but limited its exercise of supremacy to two areas only: one being the maximum amount which may be garnished from the earnings of an individual from any week or other pay period which has been subjected to garnishment, as provided in §§ 303 and 302 of the Act; and the second being a prohibition against discharge of an employee by reason of the fact that his earnings have been subjected to garnishment for any one indebtedness, as Congress provided in § 304 of the Act. Beyond these two areas, Congress expressly stated in § 307 (15 USC § 1677) that Title III:

" ' * * * does not annul, alter, or affect, or exempt any person from complying with, the laws of any State

" '(1) *prohibiting garnishments or providing for more limited garnishments* than are allowed under this subchapter, or

" '(2) prohibiting the discharge of any employee by reason of the fact that his earnings have been subjected to garnishment for more than one indebtedness.'

\*     \*     \*

"It was the intention of Congress that any section or provision of a state law that requires a larger amount to be garnished than the federal law permits in § 303 of the Act be considered preempted by the federal law. On the other hand, *a state law provision is to be applied*

and will not be considered preempted, *if it results in a smaller garnishment amount.* "(Emphasis added.)

As indicated from the foregoing, no state is mandated in any way to enact garnishment legislation. Many states prohibit garnishments.[3] If Michigan can prohibit garnishments completely, it certainly may impose whatever restrictions upon garnishment procedures it deems proper.

The number of possible interpretations of how the Federal statute and the court rule interact. in this particular case is considerable. The two courts below, the parties, and even the judges of this panel are divided in construction.

The district court ruled that Federal law was inapplicable to the garnishee's claim, as the loan payment deduction was not itself a garnishment. The court further determined that the priority given in DCR 738.6 allowed the garnishee to deduct from disposable income whatever sum the debtor had consented to be deducted. The garnishor was then entitled to 25% of the balance, if any, that remained after deduction of the loan payment from disposable income. In this case, the garnishee, by agreement with the debtor, could take $40.89 of the $163.58 disposable income; the garnishor could take 25% of the $122.69 balance, or $30.67.

The Wayne County Circuit Court determined that the court rule did not establish any priority in favor of the garnishee, because the garnishee, unlike the garnishor, was not a judgment creditor. Therefore, the garnishor could take its 25% claim

[3] The *Hodgson v Hamilton Municipal Court* decision, *supra,* interestingly points out the concern of Congress over the tremendous increase in number of personal bankruptcies and the resultant effect upon interstate commerce and notes the striking drop in bankruptcy filings in those states which prohibit garnishments.

from the disposable income. Once the garnishor had taken its full 25% claim, the garnishee could take nothing. The circuit court held that, while the deduction of the loan payment was not technically a garnishment, the deduction had become part of a garnishment proceeding. As the Federal act prohibits a state court from enforcing any order contrary to the act, the circuit court could not issue an order resulting in the loss to the debtor of over 25% of his income. In this case, the garnishor could take $40.89, the garnishee nothing.

The dissent of Judge BASHARA would allow the garnishee to deduct whatever sum agreed to by the debtor, with no limitations, and then allow the garnishor to take 25% of the original disposable income out of the balance, if any, remaining after garnishee's deduction. In this case, the garnishee would take $40.89 and the garnishor would take $40.89.

Our conclusion draws upon all of the above interpretations and yet differs from them all. We hold that a garnishee is entitled to deduct from disposable income whatever sum was agreed upon by the debtor, with no limitation. The garnishor can then claim the difference, if any, between 25% of disposable income and the garnishee deduction. If the garnishee deduction is more than 25% of disposable income, the garnishor will recover nothing. In this case, the garnishee is entitled to $40.89, the garnishor nothing.

Our primary support for this conclusion is the interpretation we give to DCR 738.6. At first glance, the clause "may claim any setoff of which the garnishee could have availed himself against the principal defendant if he had not been garnisheed" would appear to require that the garnish-

ee's claim against the debtor be set off against the *garnishee's* liability to the debtor, leaving the balance subject to the garnishor's claim. This interpretation is made by the dissent and admittedly finds support in other jurisdictions with similar rules.[4]

We think that the better interpretation of the court rule is that the garnishee's claim against the debtor be set off against the claim made by the garnishor.[5] This interpretation is by no means a new or novel one and is supported by the observation that garnishment proceedings pit the garnishor as plaintiff against the garnishee as defendant. See DCR 738.5 and 738.1(1). *Cf. Detroit Fidelity & Surety Co v Bushman,* 262 Mich 304; 247 NW 190 (1933). A setoff is traditionally a balancing of claims between the parties to the immediate action. *Ward v Fellers,* 3 Mich 281 (1854), *Merchants Bank of Canada v Schulenberg,* 54 Mich 49; 19 NW 741 (1884). Hence, the garnishee's setoff will be against the garnishor's claim.

This interpretation of the court rule is additionally buttressed by doctrines of construction that serve to protect the principal debtor. Because gar-

[4] *E.g., Davison-Paxon Co v Mutual Empire Clothing Co,* 52 Ga App 686; 184 SE 409 (1936), *Southeast National Bank of Chicago v Ravin,* 35 Ill App 2d 366; 182 NE2d 925 (1962), *Henderson v Northwest Airlines,* 231 Minn 503; 43 NW2d 786 (1950), *North Chicago Rolling Mill Co v St. Louis Ore & Steel Co,* 152 US 596; 14 S Ct 710; 38 L Ed 565 (1894).
This interpretation is based on the theory that the setoff provisions in garnishment statutes are to protect the garnishee, not the principal debtor. *North Chicago Rolling Mill Co, supra,* 152 US at 619.

[5] This interpretation was apparently opted for in *Sun Sales Co v Hodges,* 256 La 687; 237 So 2d 684 (1970), where the court did not allow payment to the garnishor until the debtor's obligation to the garnishee was liquidated. The court's opinion, however, was based on a statute with much more specific directions than DCR 738.6.
*Mary v Lewis,* 57 Mich App 14, 19; 225 NW2d 206 (1974), *rev'd* 394 Mich 443; 231 NW2d 648 (1975), does not compel either interpretation.

nishment is a harsh remedy, its application will be limited whenever possible by reasonable construction of court rules and statutes. *Ford v Detroit Dry Dock Co,* 50 Mich 358; 15 NW 509 (1883), *People's Wayne County Bank v Stott,* 246 Mich 540; 224 NW 352 (1929).

Because this case concerns a statutory provision creating an exemption of wages from garnishment, we construe a rule that affects the exemption in a way that will benefit the debtor. *Hutchinson v Whitmore,* 90 Mich 255, 263; 51 NW 451 (1892). *Cf. Riggs v Sterling,* 60 Mich 643, 649; 27 NW 705 (1886).

In garnishment proceedings where an exemption is involved, we will construe rules and statutes to maximize protection of the principal debtor. *Rikerd Lumber Co v Chrouch,* 135 Mich 703; 98 NW 739 (1904).

The discussion above employs state law to resolve the controversy. Federal law merely narrows the battle over debtor's paycheck to 25% of disposable income; state law determines that, as to this 25%, the garnishee has priority over garnishor by way of setoff.

It is possible to use Federal law to reach the same result. The purpose of the Consumer Credit Protection Act has been well stated:

"The intent of the Consumer Act was to make sure that wage earners were able to receive at least 75% of their take home pay in any one pay period so that they would have enough cash to meet basic needs." *In re Kokoszka,* 479 F2d 990, 996–997 (CA 2, 1973); *aff'd* 417 US 642; 94 S Ct 2431; 41 L Ed 2d 374 (1974), *reh den* 419 US 886; 95 S Ct 160; 42 L Ed 2d 131 (1974).

Admittedly, the act does not go so far as to prohibit all creditor arrangements with debtors

that result in the receipt by the debtor of less than 75% of disposable income. *Western v Hodgson,* 494 F2d 379 (CA 4, 1974) (wage assignment is not garnishment as defined by act).

Admittedly, our recognition that the garnishee, by agreement with the debtor, can deduct as much as 100% of disposable income undercuts the purposes of the act without running afoul of its explicit prohibitions. The Federal law is clearly not all-inclusive.

However, we feel that where a state court has the opportunity to reasonably interpret a state court rule in a manner that serves the admirable Federal purpose of maximizing the debtor's share of his own earnings, the court should do so. Were we to do otherwise—were we to interpret the court rule by allowing both the garnishee deduction and the garnishor claim—we would contribute to the shrinking of the debtor's paycheck. We believe that Federal law prohibits a state court from using garnishment proceedings to exacerbate the debtor's financial situation when the state court can, by construction of a court rule, maximize the debtor's share. State laws should be interpreted in a manner that best serves the purposes of the Federal Consumer Credit Protection Act. *Hodgson v Christopher,* 365 F Supp 583 (D ND, 1973).

The rule that we announce is not without its costs. It may make credit more difficult and expensive to obtain; it may encourage more secured transactions. It may encourage excessive dependence on employers for loans. It may be unfair to favor garnishee creditors over judgment creditors.[6]

---

[6] We do caution garnishees that our rule is not without some limits. Garnishees should not join with debtors in raising garnishee deductions solely to thwart garnishing creditors. Such deductions may be fraudulent. *Cf., Nordstrom v Corona City Water Co,* 155 Cal 206; 100 P 242 (1909). *See Musser v Ricks,* 271 Mich 174, 176; 259 NW 882 (1935).

However, these are matters to which the Legislature may properly address itself by enacting legislative standards to guide both the creditor and debtor.

Reversed. No costs, a public question being involved.

J. H. GILLIS, J., concurred.

BASHARA, P. J. *(dissenting)*. I must respectfully dissent from my Brother CAVANAGH's opinion.

In 1968 Congress enacted the Consumer Credit Protection Act[1] (hereinafter referred to as the "Act"), which imposed restrictions on the garnishment of earnings effective July 1, 1970. In substance the Act limits garnishments on compensa-

---

[1] "§ 1672.

For the purposes of this subchapter:

(a) The term 'earnings' means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.

(b) The term 'disposable earnings' means that part of the earnings of any individual remaining after the deduction from those earnings of any amounts *required by law to be withheld.*

(c) The term *'garnishment' means any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt."* (Emphasis supplied.)

"§ 1673.

(a) Except as provided in subsection (b) of this section and in section 1675 of this title, the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed

(1) 25 per centum of his disposable earnings for that week, or

(2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by section 206(a)(1) of Title 29 in effect at the time the earnings are payable,

whichever is less. In the case of earnings for any pay period other than a week, the Secretary of Labor shall by regulation prescribe a multiple of the Federal minimum hourly wage equivalent in effect to that set forth in paragraph (2)." Title III of the Consumer Credit Protection Act, § 302 & 303, 82 Stat 163 (1968), 15 USCA 1672 & 1673.

tion for personal services to the lesser of 25% of disposable income or the difference between thirty times the Federal minimum hourly wage and the employee's disposable income.[2]

The Michigan garnishment procedure allows a garnishee defendant to claim a setoff against the principal defendant. DCR 738.6 states that "[E]xcept as to claims for unliquidated damages for wrongs or injuries, [the garnishee defendant] may claim any setoff of which the garnishee could have availed himself against the principal defendant if he had not been garnisheed * * * ".

The issue is whether the garnishment limitation of the Act applies to a setoff taken by the garnishee defendant as repayment for a loan made to the principal defendant. The garnishee defendant argues that 75% of the principal defendant's disposable earnings are exempt from garnishment under the Act, and that the garnishee defendant takes priority over the remainder pursuant to the setoff provision of DCR 738.6. The plaintiff argues that the Act only applies to garnishments and not to voluntary deductions from the principal defendant's earnings in repayment of a loan to an employer.

The Act defines "garnishment" as "any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt". 15 USCA 1672(c). The U.S. Court of Appeals in *Western v Hodgson,* 494 F2d 379, 382 (CA 4, 1974), interpreted this provision in determining whether wage assignments[3] were cov-

---

[2] At the time of the garnishment in 1971 the Federal minimum wage was $1.60 per hour. See Title III of Fair Labor Standards Act, as amended September 23, 1966, § 301, 80 Stat 838; 29 USCA 206. Thirty times $1.60 is $48. The difference between the principal defendant's disposable earnings of $163.58 and $48 is $115.58. This is more than 25% of $163.58 which is $40.89. Therefore, the 25% limitation is used.

[3] A "wage assignment" is generally defined as a "private arrange-

ered by the Act. The Court stated:

"[I]t appears clear that by the term 'garnishment'
Congress contemplated some type of judicial transac-
tion. Nothing in the legislative history of the statute is
to the contrary. The purported wage assignments in the
instant case, however, were brought about by neither
legal or equitable procedure. They were negotiated
between the parties and subsequently implemented ac-
cording to their tenor without judicial intervention.
Under these circumstances, we are of the opinion that
these agreements are not 'garnishments' within the
meaning of the Consumer Credit Protection Act." (Foot-
notes omitted.)

I also note that the arrangement between the
garnishee defendant and principal defendant was
not brought about by a legal or equitable proce-
dure, but rather, was voluntarily negotiated be-
tween the parties.

The Secretary of Labor acting through the Wage
and Hour Division of the Department of Labor is
given authority to enforce the provisions of the
Act. Title III of the Consumer Credit Protection
Act, § 306, 82 Stat 164 (1968), 15 USCA 1676.
Pursuant to this authority opinions are issued by
the Wage and Hour Division construing the Act.
The opinions of the Wage and Hour Division indi-
cate that the Act applies only to garnishments and
similar transactions enforced by judicial proceed-
ing and does not apply to voluntary private trans-
actions such as wage assignments. See Opinion

ment under which the debtor, without compulsion of law, transfers
his right to receive part or all of his future wages to a third person to
pay an antecedent debt or to induce the extension of credit". Hawk-
land, *Federal Restrictions on Garnishments of Earnings; Herein of
Title III of the Consumer Credit Protection Act,* 75 Com L J 213, 216
(1970). I recognize that the facts in our case do not present a true
wage assignment. However, the facts are sufficiently analogous with a
wage assignment to aid us in the interpretation of the scope of Title
III of the Consumer Credit Protection Act.

Letters of Wage-Hour Administrator, CCH Lab L Rep, Transfer Binder, March 1969-June 1973: ¶ 30,626, March 18, 1970; ¶ 30,641, May 18, 1970; ¶ 30,662, July 6, 1970; ¶ 30,684, August 25, 1970; ¶ 30,722, December 23, 1970. We recognize that these opinions are not binding upon our Court but they are entitled to be given consideration in arriving at our conclusion.[4]

Finally, the legislative history of the Act suggests that Congress did not intend it to operate on voluntary private transactions, such as wage assignments. During debate on the Act in the House of Representatives, Congressman Whitener of North Carolina stated:

"I do not know whether it is an oversight or not-that there is nothing said about the assignment of wages procedures available in most States of the Union. The assignment of wages procedure are [sic] the ones that an unscrupulous businessman will be using * * * . I see nothing here that prevents an unscrupulous merchant [from] getting his customer to assign wages at the time he makes a purchase. That is not a garnishment procedure and would not be precluded by the bill."[5]

I would hold that Congress never intended Title III of the Consumer Credit Protection Act to apply to a voluntary loan agreement between an employer and an employee whereby the employer

---

[4] The effect to be given to opinions of the Wage-Hour Administrator was outlined in *Skidmore v Swift & Co,* 323 US 134, 140; 65 S Ct 161; 89 L Ed 124 (1944). "We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

[5] 114 Cong. Rec. 1837 (1968).

deducts a portion of the employee's salary for repayment of a loan to the employee.

Since the Act does not apply to voluntary private transactions between the employee and the employer, the setoff provision of DCR 738.6 must be read in conjunction with the Act. The clear import of DCR 738.6 is that the garnishee defendant is entitled to a setoff before the plaintiff can reach the funds of the principal defendant in the possession of the garnishee defendant. See also *Mary v Lewis,* 57 Mich App 14; 225 NW2d 206 (1974), *rev on other grounds,* 394 Mich 443; 231 NW2d 648 (1975), *reh granted* 395 Mich 902 (1975). The garnishee defendant was entitled to setoff the amount he actually intended to deduct from the principal defendant's earnings.[6] As per the disclosure the garnishee defendant was permitted a setoff of 25% of the principal defendant's disposable earnings of $163.58 which was computed on the disclosure as $40.89.

After setoff by the garnishee defendant the plaintiff was entitled to garnish 25% of the principal defendant's disposable earnings of $163.58 which amounted to $40.90. The setoff of the garnishee defendant is not to be deducted in determining "disposable earnings" because it was not a deduction "required by law to be withheld". 15 USCA 1672(b). The failure of the garnishee defend-

---

[6] There is no prohibition against an employer deducting from an employee's earnings the amount of any indebtedness owed by the employee to employer. MCLA 408.521; MSA 17.271. Nor is there any statutory limitation on the amount the employer can setoff to satisfy the obligation. However, I believe the employer will be constrained to exercise restraint in invoking his right to setoff. If an employee is faced with a 25% setoff against disposable earnings to satisfy a debt owed an employer and a 25% garnishment against disposable earnings, he may no longer believe that it is profitable to keep working. The employer in this situation must exercise restraint in setoff or the employee will resign and the employer may well lose any opportunity that he had for repayment of the loan.

ant to withhold $40.90 from the principal defendant's earnings results in liability of $40.90 to the plaintiff.

The principal defendant was then entitled to the remaining balance.

Though the majority opinion labels its interpretation of setoff as neither new nor novel, no precedent is cited to support the interpretation espoused. By applying general rules of construction the majority has in fact placed a new and novel interpretation on setoff as it relates to garnishment proceedings.

The United States Supreme Court long ago in *North Chicago Rolling Mill Co v St. Louis Ore & Steel Co,* 152 US 596; 14 S Ct 710; 38 L Ed 565 (1894), construed setoff to mean that the garnishee defendant takes its setoff against the principal defendant. This is the overwhelming majority view. See cases cited in 38 CJS, Garnishment, § 203, p 439, and 6 Am Jur 2d, Attachment and Garnishment, § 372, p 820. Moreover, the majority's interpretation flies in the face of DCR 738.6 which provides that the setoff is to be taken against the principal defendant.

The majority at footnote 6 states: "Garnishees should not join with debtors in raising garnishee deductions solely to thwart garnishing creditors. Such deductions may be fraudulent." I fail to see how a garnishee defendant, who has a legitimate claim against the principal defendant and priority under DCR 738.6 over the garnishor, is committing a fraud by raising his setoff to 25% of disposable income when a writ of garnishment is served, as long as the garnishee defendant deducts that amount and there has been no prior specific agreement to deduct less. The result is to allow an employer, who is periodically deducting less than

25% of an employee's disposable income in repayment of a loan, to defeat the rights of judgment creditors indefinitely by increasing the deduction to 25% of disposable income when writs of garnishment are served. This is patently inequitable.

I would reverse both the circuit court and the district court and enter judgment in accordance with this opinion.