BERAR ENTERPRISES, INC v HARMON

Docket Nos. 78-804, 78-1164. Submitted June 7, 1979, at Lansing.—
Decided October 15, 1979. Leave to appeal applied for.

Intermar of Michigan, a copartnership consisting of L. Harmon
and Herbert F. Schott, entered into a lease-option on several
thousand acres of land in northern Michigan, and in addition
purchased outright 3,000 acres. The 3,000 acres were sold on
land contract in ten-acre parcels, with Berar Enterprises, Inc.,
acting as broker. A proviso of the land contracts was that when
all 300 parcels were sold, Intermar would convey the remaining
land (that subject to the lease-option) to a corporation formed
by the titleholders of the 300 parcels. The parcels were sold and
copies of the land contracts were placed in three different
banks, including the First National Bank in Howell which
received 88 of the contracts and was to deposit the vendees'
payments on those contracts in an account for Intermar. Inter-
mar was unable to pay Berar's commissions or to exercise its
option on the land, and brought an action in Schoolcraft Circuit
Court to quiet title. The original landowners counterclaimed,
and the land contract vendees, now a corporation called Blaney
Park, Inc., intervened, and later claimed that Intermar and
Berar had acted fraudulently in the sale of the ten-acre parcels.
The vendees also established an escrow account in a Manis-
tique bank, and First National Bank in Howell received no
further land contract payments.

Berar then brought an action in Livingston Circuit Court to
recover its unpaid commissions and filed prejudgment writs of
garnishment against the three banks which held the land
contracts. The Howell bank filed a disclosure asserting that it
held no funds of or debts to Intermar.

A consent judgment was entered in the Schoolcraft County
action which, among other things, terminated all of Intermar's

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 6 Am Jur 2d, Attachment and Garnishment §§ 2, 3, 12.
[2] 6 Am Jur 2d, Attachment and Garnishment §§ 40, 41.
[3] 6 Am Jur 2d, Attachment and Garnishment § 95.
[4] 6 Am Jur 2d, Attachment and Garnishment § 126.
[5] 6 Am Jur 2d, Attachment and Garnishment §§ 6, 7.

interests in the land contracts and transferred those interests to Blaney Park, Inc. Intermar requested the Howell bank to surrender the 88 contracts it held for delivery to the Schoolcraft Circuit Court, and the bank did so. Subsequently, the Livingston Circuit Court, Paul R. Mahinske, J., found in favor of Berar for its unpaid commissions, and also entered judgment against the bank, finding the bank liable for the full amount of the judgment because of the bank's release of the 88 land contracts to Intermar contrary to the prejudgment writ of garnishment. The First National Bank in Howell appeals, alleging, among other things, that the land contracts were not subject to garnishment. *Held:*

1. The bank was merely a bailee of the land contracts, with no assigned interests or rights in the contracts, no power to enforce the vendees' payments, and no responsibility for collection of amounts due. The contract documents themselves had no salable value, and were not "property" within the meaning of the garnishment statute. Neither did the bank's obligation to return the documents to Intermar have any monetary value.

2. The vendor's interest in a land contract, to the extent that it is an interest in real estate, is not subject to garnishment.

3. Intermar's potential interest in the corporation to be formed by the vendees was entirely contingent on future events, and, in fact, was nonexistent at the time the writ of garnishment was served because Intermar had defaulted on its purchase option and was unable to convey the land to the corporation. Such potential interest was not subject to garnishment.

Reversed.

1. Gᴀʀɴɪsʜᴍᴇɴᴛ — Pʀᴇsᴇʀᴠᴀᴛɪᴏɴ ᴏꜰ Assᴇᴛs.

   The purpose of garnishment is to preserve a principal defendant's assets in the hands of the garnishee so that those assets may later be available to satisfy a claim against the principal defendant.

2. Gᴀʀɴɪsʜᴍᴇɴᴛ — Pʀᴏᴘᴇʀᴛʏ — Sᴛᴀᴛᴜᴛᴇs.

   An object which is garnished must have some salable worth capable of being applied to satisfy the garnishor's claim in order to come within the statutorily intended meaning of the term "property" in the garnishment statute (MCL 600.4011[1]; MSA 27A.4011[1]).

3. Gᴀʀɴɪsʜᴍᴇɴᴛ — Lᴀɴᴅ Cᴏɴᴛʀᴀᴄᴛs — Vᴇɴᴅᴏʀ's Iɴᴛᴇʀᴇsᴛ — Rᴇᴀʟ Esᴛᴀᴛᴇ — Pᴇʀsᴏɴᴀʟ Pʀᴏᴘᴇʀᴛʏ — Sᴛᴀᴛᴜᴛᴇs.

   A land contract vendor's interest in the land contract, to the

extent that it is an interest in real estate, is not subject to garnishment because the garnishment statute only allows garnishment of personal property (MCL 600.4011[1][a]; MSA 27A.4011[1][a]).

4. GARNISHMENT — CONTINGENT INTERESTS.
    Interests whose very existence is uncertain and contingent on future occurrences are generally not garnishable.

5. GARNISHMENT — LIMITATIONS — RIGHTS OF PARTIES.
    Garnishment is a harsh statutory remedy the application of which is limited, where it is necessary to protect the rights of the parties, by a reasonable construction of the applicable statutes and court rules.

*Michael A. Hanna,* for plaintiff.

*August, Thompson, Sherr & Miller, P.C.* (by *Ellen J. Alter* and *Irving A. August),* for First National Bank in Howell.

Before: DANHOF, C.J., and V. J. BRENNAN and H. R. CARROLL,* JJ.

DANHOF, C.J. In 1968, principal defendant Intermar of Michigan entered into a lease-option agreement with Stewart and Elsie Earle, the owners of a large vacation resort in Schoolcraft County, Michigan, called Blaney Park. The agreement afforded Intermar a lease on 13,500 acres of the resort and an option to purchase that acreage during the term of the lease until January 1, 1971. Intermar also purchased outright 3,000 acres of the resort area from the Earles.

Intermar engaged the services of plaintiff Berar Enterprises, Inc., as real estate broker in charge of selling Blaney Park for a 50% commission amounting to $1,500,000. Intermar and Berar agreed that the 3,000 acres owned by Intermar

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

would be divided into 300 ten-acre parcels and sold on land contract to individual purchasers. When all of the parcels were sold, Intermar would in addition convey the remaining 13,500 acres of Blaney Park to a corporation formed by the purchasers of the parcels.

By August, 1969, Berar had succeeded in finding land contract purchasers for all of the ten-acre parcels. Intermar's copies of the land contracts, which had been executed in duplicate, were placed in three banks. Garnishee defendant First National Bank in Howell (hereinafter "defendant") received 88 of the 300 land contracts.[1] Defendant's sole function was to deposit any payments received from the land contract vendees in an account set up by Intermar.

Intermar then began to experience increasing financial difficulties. It was unable to continue paying Berar's commission or to exercise its option to purchase the 13,500 acres of Blaney Park leased from the Earles. When the Earles refused to accept its alternative option proposals, Intermar filed suit in Schoolcraft County (hereinafter the Schoolcraft suit) on December 31, 1970. Intermar alleged that the Earles were negotiating in bad faith and sought to quiet title in itself.

The Earles counterclaimed to quiet title to the disputed acreage in themselves. Furthermore, the land contract vendees, who had by then incorporated as Blaney Park, Inc., became concerned about Intermar's ability to obtain clear title to the land and were allowed to intervene in Intermar's suit against the Earles. A few months later, the vendees filed a claim against Intermar and against Berar as third-party defendant, alleging that Inter-

---

[1] Intermar also placed 132 land contracts in the Brighton State Bank and the remainder in the McPherson State Bank.

mar and Berar had acted fraudulently in selling the ten-acre parcels. The vendees also opened an escrow account at the First National Bank of Manistique in which they placed further payments due on the land contracts. On May 26, 1971, defendant received a letter from Intermar notifying it that, because of the vendees' creation of an escrow account, it would no longer receive any land contract payments.

On June 22, 1971, Berar filed suit in Livingston County against Intermar to recover the unpaid remainder of its commission. At the same time, pursuant to MCL 600.4011; MSA 27A.4011, Berar filed prejudgment writs of garnishment on the three banks, including defendant, which were still holding copies of Intermar's land contracts. On June 30, 1971, defendant filed a disclosure asserting that it held no funds of or debts to Intermar and listing the names of the vendees on the 88 land contracts in its possession.[2]

On September 15, 1972, a consent judgment was entered in the Schoolcraft suit involving all parties except Berar.[3] Title to the 13,500 acres in dispute was quieted in the Earles, but was ordered transferred in fee from the Earles to Blaney Park, Inc., subject to the corporation's satisfactory performance of a land contract with the Earles. The consent judgment also terminated all of Intermar's interest as vendor in the land contracts on the ten-acre parcels and transferred those interests to Blaney Park, Inc.

Intermar duly informed defendant that it had no

---

[2] Brighton State Bank and McPherson State Bank disclosed that they both held certain funds belonging to Intermar at the time the writs of garnishment were served. Brighton State Bank additionally disclosed the names of the vendees on the land contracts it held.

[3] Berar refused to sign the consent judgment because it did not provide for the payment of the remainder of Berar's commission.

further interests in the land contracts. On September 22, 1972, Intermar presented defendant with a copy of the consent judgment and requested that the bank surrender the 88 land contracts so that Intermar might deliver them to the Schoolcraft Circuit Court pending their transfer to Blaney Park, Inc. In compliance with the request, defendant gave Intermar the land contracts.

On June 9, 1975, the Livingston County Circuit Court entered judgment in favor of Berar against Intermar for unpaid commissions in the amount of $576,124.76.[4] Berar subsequently filed a motion for entry of judgment against the garnished defendant and Brighton State Bank.[5] Defendant objected to any judgment against it because it held no property of or obligation to Intermar.

Nevertheless, in September, 1977, the Livingston County Circuit Court found defendant liable for the full amount of the principal judgment for Berar against Intermar plus statutory interest, costs and attorneys' fees. Defendant's liability was predicated on its earlier release of the 88 land contracts to Intermar contrary to the prejudgment writ of garnishment. Defendant appeals as of right.

Although defendant raises several issues worthy of discussion, we need to resolve only one in order to reverse the judgment below. We conclude that the land contracts held by defendant were not subject to garnishment within the meaning of the statute. The prejudgment writ of garnishment

---

[4] The judgment was affirmed by this Court in an unpublished memorandum opinion (Docket Nos. 25321, 25322, July 23, 1976).

[5] Brighton State Bank complied with the court's judgment ordering it to release to Berar the land contracts and funds it held. The file does not indicate that McPherson State Bank ever disclosed whether it had any of Intermar's land contracts or that Berar ever motioned for entry of judgment pursuant to its writ of garnishment against that bank.

should therefore have been quashed upon the filing of defendant's disclosure.

At the time the writ was issued, defendant disclosed that it held only Intermar's 88 land contracts.[6] Berar does not dispute that defendant was merely a bailee of the documents with no assigned rights or interests in the contracts, no power to enforce vendees' payments pursuant to the contracts, and no responsibility for collection of amounts due from vendees. Defendant acted solely as a depository for the vendees' payments, a function it could have performed without possession of the land contracts. The arrangement was for Intermar's convenience and was terminable at will.

According to MCL 600.4011(1); MSA 27A.4011(1), a writ of garnishment may issue against:

"(a) Personal property belonging to the person against whom the claim is asserted but which is in the possession or control of a third person * * *;

"(b) An obligation owed to the person against whom the claim is asserted * * *."

GCR 1963, 738.1 likewise provides:

".1 Persons Subject to Garnishment. After a personal action arising upon contract has been commenced in a court of record or after any judgment from a court of record, or any transcript of a judgment filed in a court of record, any person except as hereinafter otherwise provided is entitled to proceed in the circuit court by writ of garnishment against 1 or more third persons possessing or controlling property of or owing an obligation to a person or persons against whom a claim is

---

[6] Defendant held no funds belonging to Intermar at the time the writ was served nor did it thereafter receive any vendees' payments under the land contracts.

asserted in the situations provided for and subject to the limitations provided in the garnishment statute."

We agree with defendant's insistent contention that the land contracts it held fell within neither specified category and were not garnishable.

Berar first points out that the contract documents in themselves constituted personal property because they were physical objects capable of being owned. Insofar as the pieces of paper in defendant's possession were owned by Intermar, they were its "property". Berar is also correct in stating that neither the court rule nor the statute sets the threshold value for property subject to garnishment.

But the purpose of garnishment is to preserve a principal defendant's assets in the hands of the garnishee so that those assets may later be available to satisfy a claim against the principal defendant. *Johnson v Kramer Bros Freight Lines, Inc,* 357 Mich 254; 98 NW2d 586 (1959), *Posselius v First National Bank,* 264 Mich 687; 251 NW 429 (1933). The garnishment of 88 pieces of paper with no salable value does not effectuate the purpose of the statutory procedure, wastes both the court's and the parties' time, and needlessly harrasses the garnishee. In order to come within the statutorily intended meaning of the term "property" in the garnishment statute, the garnished object must have some salable worth capable of being applied to satisfy the garnishor's claim. *Cf., Gould v New York Life Ins Co,* 132 F 927, 931 (ED Ark, 1904), holding that personalty with no salable value generally is not liable to execution nor does it pass to the trustee in bankruptcy proceedings because nothing is realized for the creditor by its surrender or sale. See also 6 Am Jur 2d, Attachment and Garnishment, §§ 91, 97, pp 627, 630-631; *Rosenthal*

*v Muskegon Circuit Judge,* 98 Mich 208, 214-215; 57 NW 112 (1893).

The same reasoning disposes of Berar's contention that it could garnish defendant's "obligation" to return the land contract documents to Intermar on request. The clear import of both statute and court rule is that only monetary indebtedness by the garnishee to the principal defendant or at least some obligation convertible to a monetary value is subject to garnishment.[7] Defendant's obligation to return 88 pieces of paper to Intermar has no monetary value.

Berar also states that personal property includes intangible choses in action, *Royal Oak Twp v City of Berkley,* 309 Mich 572, 580; 16 NW2d 83 (1944), and that the tangible personalty which defendant held, the contract documents themselves, represented corresponding intangible personal property in the form of the vendor's interests in the land contracts, *Klever v Klever,* 333 Mich 179, 190; 52 NW2d 653 (1952). If Berar is contending that it garnished Intermar's interests as vendor by garnishing the documents in defendant's possession, it is clearly misguided. As defendant has repeatedly asserted, it was not assigned any interest in the contracts when Intermar handed them to defendant. Defendant thus controlled only the pieces of paper in which the vendor's interest was evidenced. See *Rosenthal, supra.*

Furthermore, the Supreme Court has held in *Brooks v Gillow,* 352 Mich 189, 192-195; 89 NW2d 457 (1958), that a vendor's interest in a land contract is not personal property insofar as it cannot be the subject of an oral gift. Any convey-

---

[7] MCL 600.4011(1); MSA 27A.4011(1) gives the circuit courts the power to apply obligations to the satisfaction of a garnishor's claim. An obligation without monetary value is obviously not amenable to such application. GCR 1963, 738 refers to obligations as debts.

ance or transfer of such an interest must be in writing to comply with the statute of frauds. To the extent that a land contract vendor's interest is an interest in real estate, it cannot be garnished because the statute only allows garnishment of personal property. MCL 600.4011(1)(a).

Finally, Berar contends that the land contract documents were in the nature of stock certificates or stock option agreements. A contract addendum provided that upon the sale of all 300 ten-acre parcels, Intermar would convey title to the remaining 13,500 acres of Blaney Park to a corporation formed by the 300 titleholders. Berar reasons that each land contract therefore represented a share in this future corporation. In the event of a vendee's default on payments under a land contract, that vendee's share in the future corporation would become Intermar's personal property. Berar concludes that Intermar's potential interest in the projected corporation as represented in the land contract documents was subject to garnishment.

Corporate share certificates belonging to Intermar and in defendant's possession at the time the writ was issued would be garnishable. See GCR 1963, 738.5(3); *Detroit Fidelity & Surety Co v Schinagel,* 262 Mich 685; 247 NW 782 (1933). But it is obvious that Intermar's interest in the future corporation was entirely contingent upon future events, including Intermar's exercise of its option to purchase the land to be transferred to the future corporation. Interests whose very existence is uncertain and contingent on future occurrences are generally not garnishable. See 6 Am Jur 2d, Attachment and Garnishment, § 126, p 650. Besides, at the time the writ of garnishment was served on defendant, Intermar had already defaulted on its purchase option and was unable to

convey the land. Intermar's potential for acquiring corporate shares was thus worthless and nonexistent.

Examining this issue from another perspective, we note that a circuit court can only issue a writ of garnishment if the plaintiff files an affidavit stating that

"the plaintiff is justly apprehensive of the loss of his claim against the defendant unless a writ of garnishment is issued and setting forth the facts in support of this claim." GCR 1963, 738.2(3).

Where the only items in the defendant's possession arguably subject to garnishment were 88 pieces of paper evidencing a contractual relationship between Intermar and various third parties not involved in the principal litigation, it cannot be maintained that Berar was justly apprehensive about losing its claim against Intermar unless garnishment was allowed.[8] Berar could acquire no security for the eventual payment of its claim because the garnishee defendant did not possess any of the valuable rights or obligations evidenced in the documents.[9]

---

[8] See *Alco Construction Corp v H & S Electric, Inc,* 49 Mich App 667; 212 NW2d 598 (1973), where this Court held that a plaintiff is required to disclose some fact beyond the mere conclusion of apprehension of loss to secure a writ of garnishment.

[9] We note that, after entry of judgment against it for surrendering the land contracts contrary to the writ of garnishment, garnishee defendant secured the return of 82 of the 88 contracts from Blaney Park, Inc. The six contracts not returned had been forfeited when the vendees ceased payments after August, 1972.

On February 6, 1978, defendant tendered the 82 contracts to Berar in open court pursuant to its motion for relief from judgment under GCR 1963, 528. Berar strongly resisted the motion, arguing that the land contracts had become worthless to anybody because they had been paid off and all the rights incident to those contracts converted into stock interests in Blaney Park, Inc. Defendant's motion was denied.

Berar's indignation at defendant's belated tender of the land con-

Garnishment is a harsh statutory remedy whose application is limited, when necessary to protect the rights of the parties, by a reasonable construction of the applicable statute and court rule. *People's Wayne County Bank v Stott,* 246 Mich 540; 224 NW 352 (1929), *Sears, Roebuck & Co v A T & G Co, Inc,* 66 Mich App 359; 239 NW2d 614 (1976). In this instance, we do not believe that the Legislature intended to impose on defendant herein the burden of strict compliance with garnishment proceedings or the possibility of a severe penalty for noncompliance with the writ of garnishment. The invocation of the statutory garnishment procedure is pointless where the garnishee possesses no assets of the principal defendant with any value capable of being applied to satisfy the plaintiff's claim.

Reversed. Costs to defendant.

---

tracts is ironic and disingenuous. Defendant was in fact offering Berar the only property of Intermar's it ever possessed and the only property ever garnished: various pieces of paper evidencing a contractual relationship. That the rights and obligations stated in the documents had become worthless was irrelevant because Berar had never acquired any interest in them by garnishing defendant. Regardless of the changed circumstances, the contracts were worth no more and no less to Berar on the date of tender than on the date of garnishment.