GOLDBLUM *v.* UNITED AUTOMOBILE, AIRCRAFT & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, FORD LOCAL NO. 50.

1. CONTRACTS—RELAXATION—REVIVAL OF STIPULATIONS.
    Where parties mutually adopt a mode of performing their contract differing from its strict terms, or mutually relax its terms by adopting a loose method of executing it, neither party can go back upon the past and insist upon a breach because it was not fulfilled to the letter; but he may insist upon a different mode of observing it in the future, and require a return to the terms of the contract.

Effect of altering a contract, see 2 Restatement, Contracts, § 436.

2. SAME—ADVERTISING COPY—STRICT OBSERVANCE OF STIPULATIONS.

Where strict observance of contract terms relative to time and person for submission of advertising copy for defendant union's publication had been disregarded by mutual acquiescence and notice had not been given plaintiff to comply with such pertinent provisions in the future, plaintiff's failure to comply with such terms strictly did not constitute a breach of the contract as a matter of law under the circumstances.

3. SAME—ABANDONMENT—BREACH OF CONTRACT—QUESTION FOR JURY.

Whether or not plaintiff, under contract to procure advertising copy for defendant union's publication was justified in abandoning contract when he did, in view of outlay involved when grave doubt was cast upon acceptability of future efforts and whether defendants had breached the contract *held,* questions for jury in action against union and its president.

4. SAME—EXPRESS CONTRACT—QUANTUM MERUIT.

Where a plaintiff relies on breach of an express contract there can be no recovery on *quantum meruit.*

5. PLEADING—AMENDMENT—COURT RULES—DEFENSES.

Where defendants' answer in action on contract does not conform to requirements of court rules in that it fails to allege facts in support of either its affirmative defense or denials therein contained, and case has to be retried, such answer is ordered stricken unless amended to conform within a reasonable time to be set by trial court (Court Rules No. 17, § 4; No. 23, §§ 2, 3 [1945]).

6. APPEAL AND ERROR—PERFECTED APPEAL—JURISDICTION—RELEASE OF GARNISHED SUM.

A trial court was without jurisdiction to enter an order releasing a portion of a sum impounded by ancillary garnishment proceedings, after appeal had been perfected.

7. GARNISHMENT—APPEAL FROM JUDGMENT FOR PRINCIPAL DEFENDANT—DISCONTINUANCE.

Suit against principal defendant in which appeal has been perfected from judgment in his favor is a live judicial proceeding and it cannot be said that there is such a failure to recover judgment as to discontinue proceedings against garnishee defendant (3 Comp. Laws 1929, § 14897).

8. SAME—DAMAGES—STANDARD REFERABLE TO CONTRACT—EVIDENCE.

That recoverable damages in garnishment proceedings must be ascertainable in amount by a standard referable to the contract itself does not require that every essential for comput-

ing damages must be found in the words of the contract but it is sufficient if the damages claimed were susceptible of definite ascertainment by testimony (3 Comp. Laws 1929, § 14857).

9. SAME—MEASUREMENT OF DAMAGES—CONTRACTS.

Where contract for furnishing advertising copy fixes the method by which the amounts due plaintiff for services rendered thereunder are to be determined and his testimony disclosed what those earnings had amounted to in the past, the future value to plaintiff of the contract breached by defendant was sufficiently ascertainable by a standard referable to the contract to permit garnishment, hence trial court's order releasing funds garnisheed was error.

10. CONTRACTS—BREACH—DAMAGES.

Where year's contract whereunder plaintiff was to furnish advertising copy for defendants' publication was breached by latter about three months before expiration, the amount due plaintiff for such alleged breach, if any, became due at the moment of such breach.

Appeal from Wayne; Miller (Guy A.), J. Submitted April 10, 1947. (Docket No. 44, Calendar No. 43,636.) Decided October 13, 1947.

Assumpsit by Leo Goldblum against United Automobile, Aircraft and Agricultural Implement Workers of America, Ford Local No. 50 and Brendan Sexton for damages for breach of contract. Directed verdict and judgment for defendant. Plaintiff appeals. Reversed and remanded for new trial.

*Dann, Atlas, Tilchin & Bloom,* for plaintiff.

*Nicholas J. Rothe* (*James Montante,* of counsel), for defendant.

DETHMERS, J. On August 7, 1944, plaintiff and the defendant union entered into a contract for a

term of one year by which plaintiff agreed to secure advertising for defendants' publication and defendant agreed to pay plaintiff therefor. The portion of the contract here in dispute provided that "advertising copy and matter must be submitted to the first party (union) not later than 5 p.m. seven days prior to the publication of the paper." The contract also provided that copy was to be subject to approval by the union and might be refused if in conflict with the principles set forth in the union's constitution and bylaws. The contract did not specify the publication dates of the paper nor the person to whom or place at which plaintiff was required to submit advertising copy and matter. While the masthead of the paper carried the 1st and 15th of the month as dates of publication, it was not published on those exact dates, but sometimes before and in other instances it went to press three or four days after such dates. The procedure followed from the beginning of the contract until April 15, 1945, with the full approval of the president of the union, was that the editor of the paper would call plaintiff prior to each publication and tell him to present his advertising copy by a certain time to the Safran Printing Company, which printed the paper. There the copy was examined by the editor. The seven-day deadline provided for in the contract was disregarded with the acquiescence of both parties, the editor testifying that adherence thereto "just wouldn't work," apparently because there was no definite time of publication.

In March of 1945, the local union held an election of officers. Plaintiff supported the incumbent president for re-election. The latter was defeated and defendant Sexton was elected president. About the middle of April, 1945, Sexton told the plaintiff, in

effect, that he had bet on the wrong horse politically and that he was through and asked plaintiff to surrender the contract. This he refused to do.

Plaintiff submitted advertising material for the issue due to be published the fore part of May, 1945, to the Safran Printing Company in accord with previous practice and it was there examined and approved on about May 4th by a temporary editor appointed to succeed the former editor who was discharged by Sexton. That advertising was printed and published in the paper.

While the plaintiff did not receive instructions from the temporary editor of the paper as to the time for submission of advertising material for the mid-May issue, as he had for previous issues, he nonetheless submitted such advertising copy on May 11th, to the Safran Printing Company, as in the past, and it was refused by that company on the ground that under their current instructions from the union they had no authority to accept it. The copy was not examined by anyone for the union nor was it ever objected to as in conflict with the principles of the union. On May 14th plaintiff called Sexton by telephone and informed him about the advertising copy and asked that Sexton give instructions that the copy be set up for printing. Sexton replied that he would not accept any ads from plaintiff. The mid-May issue of the paper was published without any advertising in it. Twice after May 15th the plaintiff called Sexton in an effort to get the matter straightened out but without avail. Plaintiff made no efforts to get advertising for the issue to be published the fore part of June or for any subsequent issues for the reason, as he testified, that he felt there was nothing he could do to get the contract reinstated, that he could not involve himself by securing advertising which he could not place

and that he had to pay out money to secure such advertising, having paid commissions totalling $1,200 on advertising secured for the mid-May issue which was not accepted by defendants.

On May 14th plaintiff wrote and mailed a letter to Sexton, again calling attention to his attempt to have his advertising copy for the mid-May issue accepted, pointing out his rights under the contract until August 7, 1945, stating his willingness to live up to the terms of the contract, charging that defendants had violated the contract and stating that, in consequence, he was soliciting no further advertising and intended to institute legal proceedings for damages for breach of contract by defendants. On May 16th Sexton replied by letter reading in part as follows:

"May I state:

"1. That the Safran Printing Company possesses instructions to accept editorial and advertising copy only when such copy is presented either by myself or my authorized representative.

"2. That I am informed that you did not submit such copy to the representatives of the Safran Printing Company, but merely inquired as to whether or not such copy would be accepted upon presentation.

"3. That such copy, as you might have presented on this date, would have been improperly presented, since the presentation would not conform to the provisions of the agreement held between this local and yourself.

"Since you are apparently holding yourself out to be an attorney, it would be a simple matter for you to check the provisions of the agreement, and make your actions conform therewith.

"This local will continue, as in the past, to accept all of its legal responsibilities. We trust that you will do likewise.

"For your information, publication date of the current issue of the Bombardier is May 14, 1945."

On June 1, 1945, Sexton wrote plaintiff as follows:

"This is to notify you that the Willow Run Bombardier publication of Local # 50, UAW-CIO, will again appear without advertising, since you have, for the second time, failed to meet the deadline established therein with respect to the presentation of advertising material five days prior to the date of publication."

On June 7th Sexton wrote the plaintiff as follows:

"This is to advise you, once again, that you have failed to conform with the provisions of the contract governing insertion of advertising material in the publication of the Bombardier of Willow Run Local 50, UAW-CIO.

"Since you have failed to do so, you have breached the contract, and have not shown to us that the breach was caused by acts beyond your control.

"It is our belief, therefore, that the contract has been broken, and we give you, herewith, formal notification that it is cancelled."

No other instructions were given plaintiff nor were requests made to him relative to the submission of advertising copy.

Plaintiff brought suit for breach of contract and the case was tried before a jury. At the conclusion of plaintiff's proofs the trial judge directed a verdict of no cause of action on the ground that plaintiff's failure, after the mid-May advertising was not accepted by the Safran Printing Company, to submit advertising copy to the officers of the union for two or three issues thereafter, constituted a failure on his part to perform the contract, thus depriving

him of the right to claim damages for a breach of contract by the union.

Defendants state in their brief on appeal that they make no claim that plaintiff was guilty of breach of contract prior to May 11, 1945, in submitting advertising copy to the Safran Printing Company rather than to union officials. They could not successfully so contend. As said in *Hazelton Coal Co.* v. *Buck Mountain Coal Co.,* 57 Pa. 301, and quoted with approval by us in *Gates* v. *Detroit & M. R. Co.,* 147 Mich. 523, 535:

" 'If the parties mutually adopt a mode of performing their contract differing from its strict terms,   *   *   *   or if they mutually relax its terms by adopting a loose mode of executing it, neither party can go back upon the past and insist upon a breach because it was not fulfilled according to its letter.' "

However, as the defendants point out, in the *Gates Case* we continued to quote from the *Hazelton Coal Co. Case* as follows:

" 'He (either party) may insist upon a different mode of observing it in the future and require a return to the terms of the contract.' "

In accord with that thought the defendants claim, as held by the trial court, that the refusal of the Safran Printing Company to accept copy on May 11th constituted notice to plaintiff that thereafter the letter of the contract was to be observed and that plaintiff's failure thereafter to submit copy to union officials constituted a breach of contract on his part. Defendants also rely on the Sexton letters of May 16th, June 1st and June 7th, respectively, as notice to plaintiff that copy must be submitted to the union officials rather than to the Safran Printing Company.

Defendants' position in this respect disregards plaintiff's testimony to the effect that Sexton on May 14th told plaintiff that he would not accept any ads from him. Sexton's letter of May 16th contains no instructions to plaintiff altering the practice, as relates to the mid-May issue, from that previously pursued, except for an insistence in general terms that the contract be complied with, which is followed by notice to plaintiff that the publication date for that issue was already two days past, rendering compliance with the contract as to that issue no longer possible. Neither did that letter, nor those of June 1st and June 7th, advise plaintiff as to deadline dates or places or persons for the submission of copy for future issues. The last two letters amount to no more than attempts to place responsibility for the breach on plaintiff without advising him as to what was required to be done differently than theretofore. All of the Sexton letters were written after May 14th when, as plaintiff claims, Sexton stated that he would accept no further advertising from plaintiff. Under these circumstances, it can hardly be said that defendants had notified plaintiff of a change of practice or mode of observing the contract in the future or advised him that the provisions of the contract, theretofore disregarded by mutual acquiescence, should thereafter be complied with in any particular respect or specific manner. Neither can it be held, under such circumstances, that plaintiff's action in regard to the submission or nonsubmission of copy constituted a breach of contract as a matter of law.

In view of Sexton's refusal to accept advertisements from plaintiff on May 14th for the mid-May issue and the fact that the securing of advertising for future issues, which plaintiff did not know would be accepted by defendants, would involve cash expenditures by plaintiff and commitments by him to

advertisers, we think applicable here the following language from *Oakley* v. *Duluth Superior Dredging Co.,* 223 Mich. 478:

"Whether plaintiff was justified in abandoning the contract when he did was, under the proof, a question of fact for the jury."

These facts, Sexton's statement to plaintiff in the middle of April to the effect that plaintiff was through because he had bet on the wrong horse politically, Sexton's refusal of May 14th to accept further advertising from plaintiff, the Safran Printing Company's refusal to accept the mid-May advertising on May 11th, plaintiff's two unsuccessful attempts thereafter to get the matter straightened out with defendants, and the expense and hazard involved in connection with any effort by plaintiff to secure and submit further advertising, as well as the three Sexton letters, properly constituted matters for submission to the jury for a determination by them of whether defendants had breached the contract and whether plaintiff was justified in abandoning the contract when he did.

We do not agree with plaintiff's contention that the court should have granted his motion for judgment on the common counts and bill of particulars left unanswered by defendants. His case being based on a claim for damages for breach of express contract, he cannot recover on the quantum meruit theory. *Geistert* v. *Scheffler,* 316 Mich. 325.

Plaintiff complains that defendants' answer does not comply with the Michigan Court Rules No. 17, § 4; No. 23, §§ 2, 3 (1945) and that the court erred in admitting into evidence matters not covered by the pleadings. Defendants' answer does not allege facts showing wherein there was a failure on plaintiff's part to perform the contract as now contended by defendants. Neither does it set forth the sub-

stance of the matters relied upon to support the denials therein contained. Inasmuch as the case must be retried, the trial court is directed to enter an order striking defendants' answer unless it be amended to conform to court rules in these respects within a reasonable time before retrial to be fixed by the trial court.

After appeal was perfected the trial court, upon defendants' motion, conditionally quashed the garnishment proceedings ancillary hereto, releasing the sum of $10,700 impounded, except for $2,500 which the court held ample security for plaintiff. The court based its action on the grounds that the verdict of no cause of action terminated garnishment proceedings and that the damages claimed by plaintiff cannot be determined by a standard referable to the contract itself. While we think the trial court was without jurisdiction to enter this order after the appeal was perfected (*Daugherty* v. *Reading,* 266 Mich. 514; *Scott* v. *Scott,* 255 Mich. 663) we consider the question on its merits because it may recur upon remand of the case. From the syllabus in *Olczynski* v. *Bolibrzuch,* 267 Mich. 665, we quote the following:

"Suit against principal defendant in which appeal has been perfected from judgment in his favor is a live judicial proceeding and it cannot be said that there is such a failure to recover judgment as to discontinue proceedings against garnishee defendant (3 Comp. Laws 1929, § 14897 *)."

In *Talbert* v. *Solventol Chemical Products, Inc.,* 304 Mich. 557, we said:

"The phrase that the recoverable damages must be ascertainable in amount by a 'standard referable

---

* Stat. Ann. § 27.1895.—Reporter.

to the contract itself,' does not mean that every essential for computing damages must be found in the words of the contract, and courts have not so construed it. Instead it has quite universally been held that it is sufficient if, in the light of the terms of the contract, 'the damages claimed *were susceptible of definite ascertainment by testimony.*' ''

In the *Talbert Case* we held that, under a contract fixing a percentage commission and testimony as to what such commission had amounted to in the past, the future value to plaintiff of the contract breached by defendant was sufficiently ascertainable by a standard referable to the contract to permit garnishment.* In the instant case, the contract fixes the method by which the amounts due plaintiff thereunder are to be determined and plaintiff's testimony disclosed what those earnings had amounted to in the past. For reasons stated in the *Talbert Case* we hold that garnishment for the items of damage claimed by plaintiff was proper. In so holding we are not unmindful of our decision in *Erb-Kidder Co.* v. *Levy,* 262 Mich. 62, stressed by defendants, in which we held that rent is not subject to garnishment before it is due. In the case at bar, the amount due plaintiff for alleged breach of the contract, if any, became due at the moment of such breach by defendants. The order releasing funds, referred to as an order quashing the writ of garnishment, is vacated and set aside.

Judgment reversed, verdict set aside and case remanded for new trial in accord herewith. Costs in both courts to plaintiff.

CARR, C. J., and BUTZEL, BUSHNELL, SHARPE, BOYLES, REID, and NORTH, JJ., concurred.

---

* See 3 Comp. Laws 1929, § 14857 (Stat. Ann. § 27.1855).—RE-PORTER.