## ALCO CONSTRUCTION CORPORATION v H & S ELECTRIC, INC

### OPINION OF THE COURT

1. GARNISHMENT—SECURITY—APPREHENSION OF LOSS.

   The purpose of garnishment is to impound security for satisfaction of a demand where the plaintiff or affiant is justly apprehensive of the loss of the security unless a writ of garnishment issue.

2. GARNISHMENT—GARNISHMENT BEFORE JUDGMENT—AFFIDAVIT—COURT RULES.

   A plaintiff's allegations in an affidavit for writs of garnishment before judgment that the defendant failed to pay its debts as they matured and that defendant's liabilities may exceed its assets were sufficiently specific to support a claim of just apprehension of loss as required by court rules because the affidavit notified the defendant of facts he must repel, tended to prove plaintiff's apprehension of loss, and notified the court of potential risk (GCR 1963, 738.2[3]).

3. GARNISHMENT—GARNISHMENT BEFORE JUDGMENT—AFFIDAVIT—ASCERTAINMENT OF DAMAGES.

   The amount of indebtedness stated in an affidavit for a writ of garnishment before judgment need not be absolutely correct where the damages are ascertainable by standards established in the contract and where the plaintiff's estimate of damages was as reasonable as could be expected at the time the complaint and affidavit were filed.

### DISSENT BY J. H. GILLIS, P. J.

4. GARNISHMENT—GARNISHMENT BEFORE JUDGMENT—CONSTITUTIONAL LAW—DUE PROCESS.

   *The Court of Appeals cannot ignore the constitutional problem inherent in a statutory scheme providing for garnishment before judgment in light of recent United States Supreme*

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 6 Am Jur 2d, Attachment and Garnishment § 12.
[2–4] 6 Am Jur 2d, Attachment and Garnishment § 336.

*Court decisions requiring adequate notice and opportunity for hearing prior to depriving a person of any significant property interest; therefore, a case involving garnishment before judgment and without a hearing should be remanded for a trial court determination of the issue in a full adversary proceeding (GCR 1963, 738.2).*

Appeal from Wayne, Edward F. Bell, J. Submitted Division 1 May 10, 1973, at Detroit. (Docket No. 14591.) Decided September 26, 1973.

Complaint by Alco Construction Corporation against H & S Electric, Incorporated, for breach of contract. Defendant's motion to quash a writ of garnishment granted. Plaintiff appeals by leave granted. Reversed and remanded.

*Katz, Victor & Yolles* (by *Neil M. Colman*), for plaintiff.

*Hyman & Rice* (by *Thomas J. Beale*), for defendant.

Before: J. H. GILLIS, P. J., and HOLBROOK and BASHARA, JJ.

BASHARA, J. Plaintiff instituted suit against defendant for breach of a contract to install electrical equipment alleging damages in excess of $100,000. The same day plaintiff filed affidavits for writs of prejudgment garnishment under the authority of GCR 1963, 738.2. The affidavits alleged indebtedness in the same amount as stated in plaintiff's complaint.

The affidavits further stated:

" * * * that Plaintiff is justly apprehensive of the loss of said sum * * * unless a Writ of Garnishment is issued for the reason that said defendant has failed to pay its debts as they mature and may have incurred

debts in excess of its assets and without said writ of garnishment may at any time release, remove, secrete, transfer, dispose of or withdraw its assets or prefer other creditors, thereby leaving itself without sufficient assets to satisfy plaintiff's judgment."

After service of writs of garnishment on six Detroit area banks, one garnishee defendant disclosed indebtedness of about $3,000.

Defendant H & S Electric Co. sought a bill of particulars. Plaintiff eventually replied, revising damages to $69,035.58 to reflect the amount plaintiff alleged was paid out in excess of the original contract price as a result of defendant's failure to complete the contract.

Defendant moved to quash the writ of garnishment contending that plaintiff failed to set forth facts sufficient to support its claim as required by GCR 1963, 738.2(3). It was defendant's further contention that the writ stated an incorrect indebtedness as shown by the plaintiff's bill of particulars. The trial judge granted defendant's motion to quash. This Court has granted plaintiff's application for leave to appeal from that order.

Plaintiff contends on appeal that the statement contained in its affidavit was specific enough to satisfy the rule. GCR 1963, 738.2(3) provides that the writ shall issue if plaintiff or his representative avers that:

"the plaintiff is justly apprehensive of the loss of his claim against the defendant unless a writ of garnishment is issued and *setting forth the facts in support of this claim.*" (Emphasis supplied.)

The question regarding the degree of specificity of the affidavit on prejudgment garnishments under the present court rule appears to be one of first impression in the appellate courts of Michi-

gan. In *Tsingos v Michigan Packing Co,* 272 Mich 7; 260 NW 783 (1935), the Court stated that the purpose of garnishment is to impound security for satisfaction of a demand where the plaintiff or affiant is justly apprehensive of the loss of the security unless a writ of garnishment issue. GCR 1963, 738.2(3), which requires the affidavit, is meant to impose a limitation on the power of the plaintiff to impound such security by requiring him to show that he is not only apprehensive of loss, but to also set forth the facts in support of his claim. The principal defendant is thereby given notice of the allegations which have caused a freezing of his assets and may come forward to deny or repel such allegations.

Two interesting West Virginia decisions appear to shed some light on the problem. *Roberts v Burns,* 48 W Va 92; 35 SE 922 (1900), required the statement of material facts to be certain and definite in legal point of view in order to inform the defendant of facts he must repel. In ruling on the necessary degree of specificity of facts supporting an affidavit for writ of attachment, the West Virginia Court cited with approval an earlier case, *Delaplain & Co v Armstrong,* 21 W Va 211, 214 (1882). The Court there stated:

"The manifest object of the statute in requiring the material facts to be stated, is to guard the property of the debtor against improper seizure and to enable the court to judge and determine whether the information, thus supplied by the affidavit, furnishes reasonable proof of the main fact involved—the fraudulent intent of the debtor."

The inherent difficulty in requiring specific facts in affidavits for prejudgment garnishments is that there has been no opportunity for discovery. GCR 1963, 738.9 (1)(4); GCR 1963, 302–313. Were discov-

ery available, however, and defendant put on notice, the plaintiff's apprehension of loss could well become a reality. This could defeat the security the rule means to provide.

The court rule was intended to force the plaintiff to a disclosure of some facts beyond the mere conclusion of apprehension of loss. This disclosure would enable the principal defendant to have notice of, and an opportunity to repel, those more specific allegations upon which the writ is founded.

Application of the foregoing principles to the instant affidavit results in the following analysis: Plaintiff claims it fears loss because defendant failed to pay its debts as they matured. Such an allegation, if supported, provides notice to the defendant of a fact he must repel, tends to prove plaintiff's apprehension of loss, and notifies the court of potential risk. Plaintiff next alleges that defendant's liabilities may exceed its assets. While defendant claims such a statement is conclusory and speculative, without discovery greater specificity of supporting facts is improbable. Plaintiff further notifies the defendant, by this allegation, of a fact he must repel.

Defendant next argues that the trial court order should be upheld because plaintiff stated an incorrect amount of indebtedness in the initial writ. When damages are ascertainable by standards established in the contract, the amount stated in the writ need not be absolutely correct:

"The statute requires that the affidavit in garnishment *shall state* that the principal defendant is indebted to the plaintiff in a given amount. This requirement was met by plaintiff's garnishment affidavit; and it is not required that the amount be stated with absolute correctness as determined by the amount ultimately found due to plaintiff in the principal suit. In the case

at bar, the damages may be ascertained by the standards set up in the alleged contract, if proven." (Emphasis by the Court.) *Talbert v Solventol Chemical Products, Inc,* 304 Mich 557, 565; 8 NW2d 637, 640 (1943). See also *Geistert v Scheffler,* 312 Mich 36, 39; 19 NW2d 477, 479 (1945), and *Goldblum v United Automobile, Aircraft & Agricultural Implement Workers of America, Ford Local No 50,* 319 Mich 30, 40–41; 29 NW2d 310, 314 (1947).

The contract here provides:

"If, for any reason, the Contractor shall fail to complete any of the portions or the whole of this contract within the time specified, ALCO may have the work done by others and the *cost of completion* of said work shall be charged to Contractor."

The damages were ascertainable by reference to the cost of completion standard in the contract. Plaintiff's estimate of the cost of completion was as reasonable as could be expected at the time the complaint and affidavit were filed.

It is, then, our opinion that the trial judge was incorrect in quashing the writ of garnishment on the facts before us. We, therefore, reverse and remand with direction to reinstate the original writ.

HOLBROOK, J., concurred.

J. H. GILLIS, P. J. *(dissenting).* I dissent. Whether by design or neglect, the parties never raised the constitutional infirmities inherent in the prejudgment garnishment procedure. The logic of *Fuentes v Shevin,* 407 US 67; 92 S Ct 1983; 32 L Ed 2d 556 (1972), has been applied to a wide variety of situations. *Cf. Straley v Gassaway Motor Co Inc,* 359 F Supp 902 (SD W Va, 1973); *Mason v Garris,* 360 F Supp 420 (ND Ga, 1973) (repairman's lien); *Inter City*

*Motor Sales v Judge of the Common Pleas Court for the City of Detroit,* 42 Mich App 112; 201 NW2d 378 (1972) (replevin); *Quebec v Bud's Auto Service,* 105 Cal Rptr 677 (Super, 1973) (mechanic's lien); *Hall v Garson,* 468 F2d 845 (CA 5, 1972) (innkeeper's lien); *Oakland National Bank v Anderson* (Docket No. 15788, decided August 1, 1973 [unreported]) (replevin). In *Western Coach Corp v Shreve,* 475 F2d 754 (CA 9, 1973), the Court voided the Arizona prejudgment garnishment statutory scheme for failure to provide adequate notice and opportunity for hearing as required by *Fuentes v Shevin, supra.* I have serious doubts that our court rule could survive scrutiny for due process violations. I do not think we can safely ignore the constitutional problem.

Several courts, prior to *Fuentes v Shevin, supra,* considered the constitutionality of prejudgment garnishment of bank accounts in light of *Sniadach v Family Finance Corp,* 395 US 337; 89 S Ct 1820; 23 L Ed 2d 349 (1969). *Sniadach* outlawed prejudgment garnishment of wages, apparently because the Court disdained the deprivation of necessities of life absent prior notice and opportunity for a hearing. Courts then split on the question of whether bank accounts were necessities within the scope of *Sniadach.* Some said the *Sniadach* rationale simply did not apply; bank accounts are not wages. Cf. *Michael's Jewelers v Handy,* 6 Conn Cir 103; 266 A2d 904 (1969); *Andrew Brown Co v Painters Warehouse, Inc,* 11 Ariz App 571; 466 P2d 790 (1970). Other courts, convinced that due process violations do not depend on the type of property involved, extended the requirement of notice and a prior hearing to prejudgment garnishment of bank deposits. Cf. *Randone v Appellate Department of the Superior Court of Sacramento*

*County,* 5 Cal 3d 536; 96 Cal Rptr 709; 488 P2d 13 (1971); *Larson v Fetherston,* 44 Wis 2d 712; 172 NW2d 20 (1969). The Supreme Court later apparently adopted the *Randone* approach in *Fuentes, supra.* [1] The Court explained that its earlier "necessities" language was but a part of the mainstream of its prior due process decisions, requiring an opportunity for a prior hearing before a deprivation of property takes place. The crucial test is whether the procedure *deprives* a person of *any significant property interest* without prior notice and opportunity for a hearing.

The threshhold question is whether the freezing of funds in a bank account is a significant property interest within the meaning of *Fuentes.* While *Fuentes* disdained establishing gradations in property interests, the interest at stake in a bank account is clearly as crucial as a debtor's interest in his continued use of replevied goods. Since *Fuentes* found a defaulting buyer's possessory interest in goods purchased on a conditional sales contract within the ambit of the Fourteenth Amendment protection, then appellee's interest in its own bank account is surely within the scope of interest protected.

Again, in *Sniadach* the Court indicated that extraordinary circumstances might permit seizure to precede a hearing. In *Fuentes,* the Court refined the meaning of extraordinary circumstances. Prior hearings can be dispensed with, said the Court, if the seizure is related to an important governmental or general public interest, if prompt action is

---

[1] *Cf. Fuentes v Shevin,* 407 US 67, 88; 92 S Ct 1983, 1998; 32 L Ed 2d 556, 574 (1972), fn 19: "The Supreme Court of California recently put the matter accurately: '*Sniadach* does not mark a radical departure in constitutional adjudication. It is not a rivulet of wage garnishment but part of the mainstream of the past procedural due process decisions of the United States Supreme Court.' *Randone v Appellate Department,* 5 Cal 3d 536, 550; 488 P2d 13, 22."

required by a special need, and if the person
initiating the seizure is a government official re-
sponsible for determining, under the standards of
a narrowly drawn statute, that the taking is justi-
fied and necessary in the circumstances. I think
our court rule meets, and must yield to, the same
criticism as the Florida and Pennsylvania statutes
in *Fuentes.* First, no important governmental in-
terest is served, only the interest of a private
creditor acting for his own gain. Next, no special
need for prompt action is shown. While *Fuentes*
posits a creditor could make a showing of immedi-
ate danger, destruction or concealment, our stat-
ute is not so narrowly drawn. Why should the
creditor's apprehension of loss, a subjective state of
mind, supported by facts, justify deprivation of a
significant property interest without a prior hear-
ing? Finally, our statute effectively abdicates state
control since no judicial scrutiny occurs before the
seizure. The garnishment writ issues automatically
upon the filing of the papers.

I appreciate *Fuentes'* acknowledgment that
hearings can take different forms dependent on
the property interest at stake. Yet I cannot extend
that pronouncement to hold that an opportunity to
quash the writ of garnishment after the seizure
comports with contemporary notions of due proc-
ess and fair play.

Because of these reservations, I would remand
for a trial court determination of the issue in a
full adversary proceeding. This case presents spe-
cial circumstances mandating invocation of our
broad remedial powers to fashion appropriate re-
lief. GCR 1963, 820.