**FIRST NATIONAL BANK, a National Banking Association of Elkhart, Indiana, Plaintiff,**

v.

**Jerry Noel HASTY (Principal) Defendant,**

v.

**BRA-MAR TOOL DIVISION, MWA COMPANY, a/k/a Bra-Mar Division, MWA Corporation, a/k/a Bra-Mar Tool Division, Superior Hone Corporation, Garnishee Defendant.**

Civ. A. No. 5–71484.

United States District Court,
E. D. Michigan, S. D.

March 22, 1976.

George E. Kuehn, Detroit, Mich., for plaintiff.

Geoffrey L. Smith, Detroit, Mich., for defendant.

MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO QUASH ALL WRITS OF GARNISHMENT ISSUED AFTER OCTOBER 1, 1975.

PHILIP PRATT, District Judge.

On October 16, 1974, plaintiff, the First National Bank of Elkhart, Indiana, obtained a judgment in the amount of $82,358.44 against defendant Jerry Noel Hasty, ("Hasty") in the United States District Court for the Northern District of Indiana. No appeal having been taken, the judgment, which represents monies due and owing upon certain fraudulently procured bank loans,[1] was registered in this court pursuant to 28 U.S.C. § 1963 on August 7, 1975. Subsequently, plaintiff caused this Court to issue a series of writs of garnishment directed to defendant's assets in the hands of the Bra-Mar Tool Division of MWA Company, the garnishee defendant. This Court

---

1. See ¶ 12 of Findings of Fact and Conclusions of Law.

has granted defendant Hasty's motion to quash the first two writs, dated August 7 and September 19, 1975, because service was defective.[2] Plaintiff then filed a motion for judgment against the garnishee defendant as to several of the remaining writs. In opposition to the motion, defendant Hasty filed a motion to quash all writs of garnishment issued after October 1, 1975,[3] on the grounds that the post-judgment garnishment procedures of MCLA 600.4011 et seq. are violative of the due process clause of the Fourteenth Amendment. Hasty seeks an injunction against plaintiff Bank, restraining it from issuing further writs of garnishment.

As a preliminary matter, this Court must determine whether defendant's motion necessitates scrutiny by a three-judge court, pursuant to 28 U.S.C. § 2281, which provides:

"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute . . . shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

Although defendant is seeking injunctive relief based upon a constitutional challenge to a statute and court rules of state-wide application, this Court concludes that a three-judge court need not be convened. The injunctive relief, if granted, will not run against a "state officer." (*Wilentz v. Sovereign Camp, Woodmen of the World,* 306 U.S. 573, 59 S.Ct. 709, 83 L.Ed. 994 (1939)). In the case at bar, the injunction is sought against the plaintiff Bank. As the Fifth Circuit explained with reference to a comparable injunctive request:

"Here the injunction is sought against the landlord. And, although he may be performing state functions for purpose of any state action requirement, this does not mean that he becomes a state officer for purposes of § 2281 . . . It seems apparent that the policy (of the Act) was also never intended to apply to situations, as here, where a private person, although performing a function traditionally performed by the state and 'clothed with authority', who is acting essentially for his own benefit is to be restrained." (*Hall v. Garson,* 430 F.2d 430, 442–3 (5th Cir. 1970); See also *Holman v. Bd. of Ed. of Flint,* 388 F.Supp. 792 (E.D.Mich.1975)).

Inasmuch as all of the requisites for convening a three-judge court are not present, this Court may proceed to consider the merits of defendant's contentions.

Defendant poses a number of challenges to post-judgment, ex parte issuance of writs of garnishment by the Clerk of the Court. According to Michigan procedure, as utilized by this Court pursuant to F.R.C.P. 69, satisfaction of judgment may be obtained by judicial process from the personal property of the judgment debtor in the possession or control of a third person,

"only if [a claim] is taken in accordance with court rules promulgated to protect the parties and it is asserted that the plaintiff is justly apprehensive of the loss of his claim unless garnishment is issued." (M.C.L.A. § 600.4011).

GCR 738.2 provides that the clerk of the court shall issue a writ of garnishment when presented with an affidavit stating, inter alia, that,

"the plaintiff is justly apprehensive of the loss of his claim against the de-

---

**2.** Memorandum Opinion and Order of February 5, 1976.

**3.** In view of defendant's statement of coverage of the motion, this Court considers the challenges posed herein, and the legal conclusions reached by the Court, to be applicable to, and dispositive of, all such challenges to any present and future writs issued after October 1, 1975.

fendant unless a writ of garnishment is issued and setting forth the facts in support of his claim."

GCR 738.3 requires that the writ direct the garnishee to inform the principal defendant of the garnishment proceedings. The garnishee must then file a disclosure of liability (GCR 738.6), upon which the cause may be tried (GCR 738.10–.11).

Hasty argues that the procedure offends the Constitution in that: (1) there are no definite standards setting forth the facts necessary to constitute "just apprehension;" (2) there is no statutory mechanism by which a principal defendant may interpose objections; (3) there is inadequate opportunity for judicial scrutiny and hearing on the issues of "just apprehension" and garnishment of wages; (4) there is insufficient notice to the principal defendant; (5) there is no requirement that plaintiff post a bond; (6) the garnishee's ability to withhold 125% of the debt garnisheed violates due process; (7) the procedure imposes undue hardship on the employer. The Court will treat each claim separately.

### (1) Standards Governing "Just Apprehension"

■ Defendant is correct in his assertion that neither the statute nor court rule contain specific guidelines concerning the quantum or nature of facts necessary to establish that plaintiff is "justly apprehensive of the loss of his claim." However, the rule does require presentation of "facts in support of this claim" (GCR 738.2(3)). Moreover, appropriate standards are developing in the case law context (See, e. g., *Hosner v. Brown*, 40 Mich.App. 515, 199 N.W.2d 295 (1972); *Alco Construction Corp. v. H & S Electric, Inc.*, 49 Mich.App. 667, 212 N.W.2d 598 (1973)), and therefore the contention is without merit.

### (2) Objections by Principal Defendant

■ Defendant's assertion that neither the statute nor court rule provides a mechanism for objection is also unconvincing. Aside from provision for dissolution of garnishment with and without bond (GCR 738.14–.16).[4] the courts in this state regularly entertain petitions by defendants to quash garnishments.[5] (See, e. g., *Tsingos v. Michigan Packing Co.*, 272 Mich. 7, 260 N.W. 783 (1935); *People's Wayne County Bank v. Scott*, 246 Mich. 540, 224 N.W. 352 (1929)). In fact, the Michigan Court of Appeals has unequivocally rejected a plaintiff's argument that principal defendants have no recourse:

"There is no merit whatever to the plaintiff's position with reference to this third question . . . and we are of the opinion that the defendants would be entitled by the elementary dictates of justice to a legal remedy for the wrongful garnishment of their property in an unlawful fashion by the plaintiff." (*Hosner v. Brown, supra,* 40 Mich.App. at 524, 199 N.W.2d at 300).

Accordingly, this Court is persuaded by the practice engrafted onto the garnishment rules that defendant's challenge is without foundation.

### (3) Judicial Scrutiny and Hearing

■ The existence and availability of the motion to quash after service of the writ obviates defendant's objection that there is no hearing or judicial scrutiny of the issuance of writs. Moreover, it is manifestly clear that wages are subject to garnishment post-judgment (M.C.L.A. § 600.4011). Therefore, the only viable question presented by defendant is whether due process dictates that a hearing or other judicial consideration of the question of "just apprehension"[6] be provided *prior to* issuance of the writ.

---

4. A post-judgment garnishment may not be dissolved without bond (GCR 738.16(2)).

5. This case is a prime example of that practice. Several writs were quashed in the Wayne Circuit Court. This Court has quashed two writs.

6. The Court notes the only issue on which defendant seeks a prior hearing is "just apprehension," although it also argues for a statutory exemption. (See brief, page 7; reply brief, page 3).

■■ The Court notes that garnishment, as opposed to other creditors' remedies, does entail state action necessary to invoke the strictures of the Fourteenth Amendment. It is well-recognized that pre-judgment garnishment is subject to due process (*Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Douglas Research & Chemical, Inc.*, 388 F.Supp. 433 (E.D.Mich.1975, 3 J. Court)). Since there is no significant difference in the degree or type of state participation in pre and post-judgment garnishments, it would appear that post-judgment garnishment also involves state action. Moreover, garnishment is entirely statutory, and was unknown at common law (38 C.J.S. Garnishment § 1b; 13 MLP Garnishment § 1). Accordingly, the garnishment statute and rules cannot be considered to be a mere codification of a pre-existing common law remedy, hence insufficient to constitute state action (*Northrip v. Federal Nat. Mortgage Assoc.*, 527 F.2d 23 (6th Cir. 1975)). Accordingly, the Court may proceed to consider the substance of defendant's argument.

■ A number of cases decided by the Supreme Court have set forth due process guidelines for the seizure of property *pendente lite.* In that context, it is clear that notice and an opportunity to be heard "at a meaningful time" are essential. (*Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556, 569 (1972)). Thus, in *Fuentes,*the Court struck down Florida and Pennsylvania pre-judgment replevin statutes which did not require advance showing by applicants that the chattels in question were "wrongfully detained." Under the Florida procedure, a party could obtain a writ on a bare and conclusory assertion of entitlement and the filing of bond. Subsequent to the seizure, the defendant was entitled to an "eventual hearing" at the trial for repossession, or reclamation, by posting a bond within three days of seizure. The Pennsylvania law was substantially similar, except that it provided *no* opportunity for hearing at any point.

In finding both enactments to be constitutionally infirm, the Court explained:

"The issue is whether procedural due process in the context of these cases requires an opportunity for a hearing *before* the State authorizes its agents to seize property in the possession of a person upon the application of another." (At 80, 92 S.Ct. at 1994, 32 L.Ed.2d at 570, emphasis in text).

The court concluded that *prior* notice and hearing were indeed required:

"If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented." (At 81, 92 S.Ct. at 1994, 32 L.Ed.2d at 570).

The Court relied in part on *Sniadach v. Family Finance Corp., supra*, which held that pre-judgment garnishment of wages must be preceded by notice and hearing. The rationale of *Sniadach* and *Fuentes* was reaffirmed in *North Georgia Finishing, Inc. v. Die-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), in which the Supreme Court invalidated the Georgia pre-judgment garnishment statute which authorized issuance of a writ by the clerk on the basis of a conclusory affidavit and without early hearing or bond. In addition, defendant was deprived of the use of the property in the garnishee's hands. The Michigan pre-judgment garnishment procedure has been found to be violative of due process for similar reasons. (*Douglas Research & Chemical, Inc., supra; Cochrane v. Westwood Grocery Co.*, 394 Mich. 164, 229 N.W.2d 309 (1975)).

Despite judicial unanimity concerning the need for hearing prior to pre-judgment deprivation, it is clear that the dictates of due process are neither absolute nor inflexible. Thus, the court in *Fuentes* enumerated the " 'extraordinary situations' that justify postponing notice and opportunity for a hearing." (407 U.S. at 90, 92 S.Ct. at 1999, 32 L.Ed.2d at 575). An important governmental interest, or need for prompt action based on a showing that a debtor will destroy

or conceal the goods may suffice to dispense with rigid hearing requirements. (At 91–3, 92 S.Ct. at 200, 32 L.Ed.2d at 576).

■ The Court refined its holdings with respect to prior hearings in *Mitchell v. W. T. Grant*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). In that case, a Louisiana statute which permits a mortgage or lien holder to obtain a writ of sequestration to forestall waste or alienation of the encumbered property was under attack. The writ is issued by a judge on an ex-parte verified affidavit and bond, but without opportunity for notice or hearing until immediately after seizure. At that point, the debtor may obtain dissolution of the writ unless the creditor proves the grounds for issuance. Reasoning that, "The requirements of due process of law 'are not technical, nor is any particular form of procedure necessary,'" (at 610, 94 S.Ct. at 1901, 40 L.Ed.2d at 415), the Court found that the legal interest of the lien creditor in the property, the presentation of a sworn and particularized complaint dealing with the merits of the action to a judge, the posting of a bond, the risk of loss or concealment of goods, and the availability of a full hearing on the issue of liability subsequent to issuance of the writ adequately protected the debtor's rights. In holding that a creditor with his own interest in the merchandise need only establish ex parte, the probability of success as a prerequisite to issuance of the writ, the Court distinguished the *Sniadach-Fuentes* rule that "the opportunity to be heard must precede any actual deprivation of private property," as follows:

> "Their import, however, is not so clear as petitioner would have it: they merely stand for the proposition that a hearing must be had before one is finally deprived of his property and do not deal at all with the need for a pretermination hearing where a full

and immediate post-termination hearing is provided. The usual rule has been '[w]here only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate.'" (At 611, 94 S.Ct. at 1902, 40 L.Ed.2d at 416).

Therefore, *Mitchell*, interpreted in conjunction with the other cases establishes the proposition that when the plaintiff enjoys some claim to the property, the existence of certain procedural safeguards, even if incomplete, prior to issuance of a writ, justifies postponement of a notice and full hearing. Only in the absence of any hearing whatsoever, or adequate pre-issuance safeguards, is the seizure infirm.[7]

Application of the foregoing principles to the question at bar convinces this Court that the Michigan post-judgment garnishment scheme passes constitutional muster. The rules developed in the cited cases have particular and specific relevance to pre-judgment seizure (See *Sniadach, supra*, 395 U.S. at 340, 89 S.Ct. at 1822, 23 L.Ed.2d at 353, 343; *Fuentes* 407 U.S. at 79, 83, 92 S.Ct. at 1993, 32 L.Ed.2d at 569), that is, a seizure which occurs prior to a determination of defendant's liability or plaintiff's entitlement to the subject property. Therefore, the primary concern of the Court has been to protect the debtor by requiring some assurance of the validity of the underlying claim prior to issuance of a writ. It is clear that the "hearings" to which the cases had reference involved determinations of liability. (*Sniadach* 395 U.S. at 343, 89 S.Ct. at 1823, 23 L.Ed.2d at 354; *Fuentes* 407 U.S. at 96, 92 S.Ct. at 2002, 32 L.Ed.2d at 579; *Mitchell* 416 U.S. at 609, 94 S.Ct. at 1901, 40 L.Ed.2d at 414).

■ Garnishment after judgment, however, presents a materially different

---

7. Thus, in *Mathews v. Eldridge*, —— U.S. ——, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court observed that full pretermination hearings are not necessarily required and that *Sniadach* and *Fuentes* only established that "something more than an ex parte proceeding before a court clerk" is necessary. (At ——, 96 S.Ct. at 902, 47 L.Ed.2d at 32).

situation. Seizure occurs after a full and final determination on the merits, and after the period for filing notice of appeal has expired. (F.R.C.P. 62(a)). Accordingly, the debtor has been afforded a full range of due process. Certainly, then, a hearing on any remaining issues concerning the propriety of the garnishment may properly be postponed until after issuance, under the rationale of *Mitchell, supra.* A judgment concluding the merits of a case is obviously more than adequate to satisfy the requirement of partial pre-issuance safeguards and justify a delayed hearing.[8]

■ Defendant argues, however, that the specific question of "just apprehension" must be subject to a pre-issuance hearing. This Court disagrees. In the first place, this Court construes the pertinent case law as mandating pre-issuance safeguards primarily, if not exclusively, on the question of liability.[9] The focus of the cases on the underlying claim is not simply a coincident of the fact that they dealt with pre-judgment seizures, which necessarily raises the issue of liability. Rather, their concern is directly related to the scope of due process. The *Fuentes* court viewed the constitutional right to be heard as serving,

"to minimize *substantively unfair or mistaken deprivations* of property." (Emphasis added, 407 U.S. at 81, 92 S.Ct. at 1994, 32 L.Ed.2d at 570). Accordingly, it emphasized that:

> "Due process is afforded only by the kinds of 'notice' and 'hearing' that are aimed at establishing the validity, or at least the probable validity, of the underlying claim . . ." (407 U.S. at 97, 92 S.Ct. at 2002, 32 L.Ed.2d at 579).

In the view of this Court, the question of "just apprehension of loss of claim" is not directed, in the post-judgment situation, to unfair or mistaken deprivations in the sense intended in *Fuentes*. The notion of fundamental fairness, embodied in the due process clause, precludes arbitrary or unmeritorious deprivations of property. "Just apprehension" has reference to fear on the part of a plaintiff that a defendant's assets will not be available to satisfy a judgment. It addresses the "fraudulent intent" of the debtor. (*Alco Construction Corp.* 49 Mich.App. at 670, 212 N.W.2d 598). It is of importance to pre-judgment garnishments, the purpose of which is to "impound security for satisfaction of a demand." (*Alco Construction, supra,* at

---

**8.** This Court is cognizant of the line of authority which relies on *Endicott-Johnson Corp. v. Encyclopedia Press, Inc.*, 266 U.S. 285, 45 S.Ct. 61, 69 L.Ed. 288 (1924), to uphold post-judgment garnishment. (*Halpern v. Austin*, 385 F.Supp. 1009 (N.D.Ga.1974); *Moya v. DeBaca*, 286 F.Supp. 606 (D.N.M.1968), appeal dismissed 395 U.S. 825, 89 S.Ct. 2136, 23 L.Ed.2d 740 (1969)). In *Endicott-Johnson*, the Court held that a judgment debtor need not be furnished with notice and hearing in post-judgment garnishment because the judgment serves as constructive notice. However, the vitality of the decision has been placed in serious doubt (*Hanner v. DeMarcus*, 389 U.S. 926, 88 S.Ct. 288, 19 L.Ed.2d 277 (1967), cert. dismissed 390 U.S. 736, 88 S.Ct. 1437, 20 L.Ed.2d 270 (1968). (See dissent to dismissal of certiorari)), and the import of *Fuentes, Sniadach*, and *Mitchell* is, at best, uncertain. Moreover, this Court finds it unnecessary to place reliance on *Endicott-Johnson*, which dealt with a statutory scheme that provided *no* notice or hearing. The Michigan procedure, which provides *delayed* notice and hearing is more nearly comparable to the statute scrutinized in

*Mitchell v. Grant, supra.* Thus, although the *Endicott-Johnson* rationale clearly justifies delayed notice and hearing, this Court prefers to premise its decision on the clearly viable, directly applicable, principles of *Mitchell v. Grant, supra.*

**9.** Thus, for instance, in *Coe v. Armour Fertilizer*, 237 U.S. 413, 35 S.Ct. 625, 59 L.Ed. 1027 (1915), upon which defendant places reliance, the Court held that when an execution against a corporation is returned unsatisfied, the creditor may not execute upon the property of a stockholder without notice and hearing to allow the stockholder to assert his own defenses. The Court focused on the stockholder's *liability*. Therefore, the case is critically distinguishable from the one at bar in which both defendant and garnishee defendant are afforded a day in court on their respective liabilities. Accordingly, the recognition that due process applies to post-judgment remedies, when viewed in context, does not require a pre-issuance hearing on the question of "just apprehension."

670, 212 N.W.2d at 599). In those circumstances, the existence of just apprehension is more germane to the purpose and operation of the garnishment, as it may protect against improper seizure (*Alco Construction* at 670, 212 N.W.2d 598).[10]

It is, however, of diminished consequence after judgment, when apprehension of loss does not negate plaintiff's entitlement to satisfaction of judgment. In that context, "just apprehension" has minimal bearing on the fundamental fairness of property deprivation. It is not a necessary buffer against either unfairness or mistake. Nor is the question of the judgment debtor's fraudulent intent itself as integral to due process as the question of underlying liability. As such, it is not deserving of the same degree of procedural solicitude as the question of liability.

■ Furthermore, this Court feels that the Michigan procedure affords defendant sufficient due process protection. A plaintiff must file an affidavit stating specific facts relative to just apprehension. Conclusory statements do not suffice. The ex parte nature of the affidavit is not fatal (*Mitchell*). In addition, the judgment guarantees due process on the question of liability. And, it is undisputed that a defendant has ample opportunity to contest the writ after its issuance and prior to final judgment against the garnishee. In fact, a principal defendant can participate in the trial against the garnishee (11 *Callaghan's Mich. Pl. & Prac.*, § 75.68). In the case at bar, Hasty has presented challenges to garnishments shortly after issuance as well as in opposition to a motion for judgment against the garnishee defendant.

Furthermore, this Court does not consider either the absence of bond (discussion *infra*) or prior judicial scrutiny as distinguishing this case from *Mitchell*.

In view of the judgment, and the availability of a post-issuance hearing, there need be no requirement of prior judicial scrutiny. In addition, this Court cannot overlook the nature of just apprehension in this garnishment setting. Because it addresses the question of defendant's intention to secret his assets, and because there is a valid judgment, this Court finds the postponement of the hearing until after issuance of the writ to be a sound and reasonable requirement. (See *Mitchell, supra,* 416 U.S. at 609, 94 S.Ct. at 1901, 40 L.Ed.2d at 414). Moreover, the need for earlier hearing is decreased by the fact that the issue is not inherently susceptible to adversary input. (*Mitchell* at 617, 94 S.Ct. at 1905, 40 L.Ed.2d at 419).

■ This Court, cognizant that due process must take account of "the precise nature of the government functions involved as well as of the private interests that have been affected by governmental action" finds that in this case, as in *Mitchell*, it is confronted with a situation wherein it must accommodate the property interest of the defendant in the monies garnished with the interest of plaintiff in satisfying its judgment. Although a judgment may not automatically create a lien in defendant's property,[11] it does give the creditor the right to appropriate the debtor's property to the satisfaction of the judgment (49 C.J.S. Judgments § 444). Accordingly, this Court does not consider that the property involved "is exclusively the property of the defendant debtor." (*Mitchell* at 604, 94 S.Ct. at 1898, 40 L.Ed.2d at 412). Moreover, it views the governmental function of garnishment in a more favorable light after judgment, when there is a definite governmental interest in enforcing the valid decrees of the courts. Therefore, the Court is constrained to conclude that hearing after issuance comports with the demands of due process.

---

**10.** This Court expresses no opinion as to due process requirements for just apprehension prior to judgment.

**11.** In Michigan, execution and levy are necessary to create a lien. (M.C.L.A. § 600.6051).

As a final consideration, this Court relies on the reasoning of *Mitchell* wherein it was said:

"The debtor in this case, who did not avail himself of this opportunity (for hearing), can hardly expect that his argument on the severity of deprivation will carry much weight . . ."
(At 610, 94 S.Ct. at 1901, 40 L.Ed.2d at 415).

In the instant case, Hasty has not attempted to quash the writs in question on the basis that they do not establish just apprehension.[12] Furthermore, a review of the affidavits indicates that they contain allegations that defendant resides in a foreign jurisdiction, has failed to make payment on the judgment, and has recently gone through bankruptcy proceedings. Such statements are clearly sufficient. *Alco Construction, supra*; GCR, *Forms*, § 1802). Therefore, this Court cannot accord defendant's constitutional attack a great measure of deference.

▮▮▮ Having determined that opportunity to be heard after issuance of the writs does not offend the Fourteenth Amendment, the Court must address defendant's contention that post-issuance hearings impermissibly shift the burden of proof. This Court finds the argument to be devoid of merit for a number of reasons. In the first place, defendant cites no precedent which indicates that a shift in burden of the type referred to states a federal constitutional question. Defendant's sole reliance is placed on *Brown v. Liberty Loan Corp. of Duval*, 392 F.Supp. 1023 (M.D.Fla.1974), in which the court disapproved of a shift of "burden of proof from the 'taker' to the one whose property is to be taken." (At 1038). The issue in *Brown* was whether a defendant was entitled to a hearing prior to issuance of the writ in his claimed exemption from garnishment. The court held that he was so entitled, because, inter alia, the shift in burden

created by post-issuance proceedings was impermissible. However, it appears to this Court that the burden of proving an exemption always falls on the party asserting it. The timing of the motion does not alter that allocation of the burden, and therefore it cannot regard *Brown* as persuasive authority for defendant's argument.

Secondly, this Court does not view a post-issuance hearing as redistributing the burdens in the case at bar. Defendant's argument is rather imprecise and it is difficult to discern his basis for claiming the shift. However, defendant appears to contend that the shift occurs by virtue of the fact that the debtor must initiate a motion, and, as movant, bears the burden of proof. Defendant's argument incorporates an *unarticulated assumption* that a pre-issuance hearing must necessarily be instituted by plaintiff. However, a reasonable procedure might well require defendant to interpose objections, regardless of the point in the proceedings. (See *Mitchell* in which it was clearly the defendant's responsibility to raise his arguments "by contradictory motion" (Art. 3506 of La. Code)). Inasmuch as defendant has not specifically argued that the pre-issuance hearing must be plaintiff's responsibility, the Court need not reach the issue. However, it does note that were the defendant the pre-issuance movant, he would certainly have the same burdens he now bears.

▮▮▮ Moreover, defendant appears to confuse the burden of proof with the responsibility for bringing the motion. Although defendant may have to initiate the hearing, he does not have the ultimate burden of persuasion. Rather, the affidavit of plaintiff serves to create the prima facie case, to which defendant can respond by means of motion. At that point, only the burden of going forward shifts to defendant. Plaintiff then rebuts defendant's contentions, and carries the ultimate burden. That allocation of the burdens is supported by the lan-

---

12. He did raise the argument with regard to the August 7 writ.

guage of *Alco Construction, supra,* 49 Mich.App. at 670, 212 N.W.2d at 599:

> "GCR 1963, 738.2(3) which requires the affidavit, . . . (requires) him (plaintiff) to show that he is not only [justly] apprehensive of loss, but to also set forth the facts in support of his claim. . The principal defendant is thereby given notice of the allegations . . . and may *come forward* to deny or repel such allegations." (Emphasis added).

Moreover, it is comparable to the burdens approved in *Mitchell,* wherein the debtor could, by motion, obtain dissolution of the writ, if the creditor did not prove the grounds for issuance. The burdens as outlined would, of course, be the same whether the hearing was held pre or post-issuance.

Finally, to the extent that any shift in burden does occur, this Court feels it is justified by the judgment, the nature of just apprehension, and the requirement of a particularized affidavit. Accordingly, it finds defendant's argument to be without merit.

### (4) *Notice*

Defendant's arguments with respect to notice appear to be three-fold: (1) that notice must be given prior to issuance of the writ; (2) that under GCR 738.3(4)(d), a principal defendant does not receive service of the writ, but is notified of the proceedings by the garnishee defendant; (3) that the failure of the garnishee defendant to notify the defendant does not invalidate the writ.

The first argument must fail for the reasons set forth in the discussion of the hearing. The second argument is confined to the *manner* of notice, inasmuch as it is uncontested that GCR 738.3(4)(d) requires notification by the garnishee defendant and that such notification was properly received in the case at bar. The record adequately reflects defendant's prompt and detailed notice as to all facets of the proceeding. Defendant's

argument is limited solely to the lack of a *service* requirement, that is, to the means of receiving notice. It is not addressed to the efficacy or scope of the notice provided by the court rule, or actually received.

Defendant's argument, rather brief and unenlightening,[13] must fail in the context of this case. It is axiomatic that,

> "Concrete injury, whether actual or threatened, is that indispensable element of a dispute which serves in part to cast it in a form traditionally capable of judicial resolution." (*Schlesinger v. Reservists to Stop the War,* 418 U.S. 208, 220, 94 S.Ct. 2925, 2932, 41 L.Ed.2d 706, 718 (1974).

Thus, in *Tyler v. Judges of Court of Registration,* 179 U.S. 405, 410–411, 21 S.Ct. 206, 208, 45 L.Ed. 252, 254 (1900), the Court explained with reference to a petitioner's objection to a statutory service of process requirement:

> "His objections throughout assume that he has actual knowledge of the proceedings, and may make himself a party to them . . . In other words, he is not affected by the provisions of the act of which he complains, since he has the requisite notice."

The same conclusion pertains to the case at bar. The extent and degree of defendant's opposition to the writs indicate that he has been fully apprised of the proceedings. He has come forward with no evidence to indicate that his notice has been inadequate or his ability to object impaired. Accordingly, this Court has no basis from which to conclude that he has been denied, "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (*Mullane v. Central Hanover Trust,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950)). Therefore, it appears that defendant has suffered no prejudice attributable to the operation of GCR

---

**13.** It is contained in two sentences on page 6 of his brief.

738.3(4)(d), and the Court need not decide whether his facial challenge to the rule has merit.[14]

Defendant's third contention, relating to the contention that the failure of notification does not invalidate the writ, must also fail because he has demonstrated no injury. He has shown no failure of notice in any respect, hence no injurious application of the provision to him. Therefore, he is not in a position to assert the claim. (*Black Coalition v. Portland School District No. 1,* 484 F.2d 1040, 1043 (9th Cir. 1973)).

### (5) *Bond*

Defendant argues that the Michigan scheme is infirm in that it does not require a bond to protect against improper seizures. In the view of this Court, the reasoning of *Douglas Research, supra,* disposes of defendant's contention:

> "Third, under Michigan law, a party seeking a writ of garnishment need post no bond to protect the principal defendant's interest in the garnished funds. In this sense, the Michigan garnishment procedure does not *seek to minimize the risk of error by furnishing protection against harm to the principal defendant pending trial on the merits.*" (At 437) (Emphasis added).

The Court's logic has particular relevance to pre-judgment garnishment. However, protection of defendant's interest in the property pending trial on the merits is simply not a compelling consideration after judgment. Nor is this Court at all persuaded that a bond is necessary or appropriate to deter procedural irregularities, as defendant suggests. Finally, this Court does not find defendant's analogy to execution bond convincing. M.C.L.A. § 600.6009 specifically states that the executing officer, "may require of the judgment creditor sufficient secretly to *indemnify him* for taking such personal property." It is clearly intended to protect the officer who may mistakenly seize property at a plaintiff's behest. The bond is not for the debtor's benefit. Moreover, garnishment, which does not involve physical seizure by an officer, does not require bond. Any mistaken attempt to garnish a debtor's assets may be corrected through the disclosure and trial process. Accordingly, this Court concludes that there need be no bond in post-judgment garnishment proceedings.

### (6) *125% Withholding*

Defendant challenges GCR 738.5, which fixes the maximum liability of the garnishee at a sum "not in excess of 1¼ times the amount of the judgment entered in favor of the plaintiff against the principal defendant." Defendant's argument, which appears to be premised on deprivation of procedural due process, is neither supported by legal authority nor explained with a sufficient degree of clarity.[15] He appears to argue that liability in excess of the actual debt, which may be passed on to the judgment debtor, must be imposed only after notice and hearing. The Court does note that GCR 738.10 provides for trial on the issue of liability, and that defendant may participate in the adjudication. Moreover, the court rule permits liability "*not in excess of* 1¼ times . . . ." Thus, it is drawn to account for factors of the individual circumstances. And, it is not patently unreasonable to impose costs on a defendant who has failed to voluntarily satisfy a judgment, thereby necessitating garnishment. However, the Court need not decide whether defend-

---

**14.** As a practical matter, notice of garnishment of wages is brought quickly to a principal defendant's attention. Experience shows that garnishments of wages are invariably imposed as closely as possible to the end of the wage period so as to insure a maximum attachment. Thus, since the debtor usually learns on his pay day of the garnishment, if not earlier, he is notified within a very short time of the issuance date of the writ.

**15.** It occupies five lines at page 7 of defendant's brief, wherein he complains of lack of notice and hearing. However, in his reply brief (p. 7), he appears to focus on substantive due process.

ant's muddied contention requires constitutional scrutiny, for defendant has offered absolutely no indication that a liability in excess of the amount owing is sought in this case. In fact, plaintiff's pending motion for judgment prays for 25% of the liability disclosed, or $73.65, a sum hardly in excess of the $82,358 judgment. Accordingly, this Court discerns no injury to defendant and declines to consider the challenge he posits. (*Black Coalition, supra*).

(7) *Undue Hardship To Employer*

 Hasty complains of the "administrative headache" to the employer caused by the garnishment proceedings. The argument does not appear to state a distinct constitutional claim, but has reference only to "the damage"[16] which wrongfully issued writs may inflict. Therefore, the Court need only observe that when the procedure comports with due process ensuing inconvenience is justified. That is especially true in the post-judgment context, when a defendant's liability and failure to voluntarily satisfy a judgment are uncontested. A balance of the competing interests favors access by the judgment creditor to the garnishment remedy. Moreover, there has been no proper showing by defendant that "his job was compromised."[17] Therefore, this Court finds defendant's arguments to be without persuasive value.

Defendant also attacks GCR 738.8, which subjects the garnishee defendant to sanctions for failure to disclose. In particular, defendant complains of the possibility of acceleration of the entire indebtedness. There is no showing that the provision has been applied to the garnishee, or that its application would affect Hasty. Accordingly defendant lacks standing to interpose the challenge.

In accordance with the foregoing opinion, defendant's motion to quash all writs issued after October 1, 1975 is DENIED.

IT IS SO ORDERED.

---

**16.** Brief, page 8.

**17.** See MSA 27A.7585, prohibiting discharge because of garnishment.